[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 438.]

THE STATE OF OHIO, APPELLEE, *v*. MCNEILL, APPELLANT.

[Cite as *State v. McNeill*, 1998-Ohio-293.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 97-929—Submitted May 12, 1998—Decided October 28, 1998.)

APPEAL from the Court of Appeals for Lorain County, No. 95CA006158.

———————————

{¶ 1} Appellant, Freddie McNeill, Jr., appeals his conviction and death sentence for the aggravated murder of Blake Fulton.

{¶ 2} On the evening of May 13, 1994, Blake Fulton and Robert Rushinsky drove about the city of Lorain seeking to purchase crack cocaine. Seeing several men they believed to be crack dealers at the corner of Massachusetts Avenue and G Street, the two stopped. As was customary, the first dealer to the car, McNeill, got the sale.

{¶ 3} Fulton and Rushinsky knew McNeill from prior drug transactions. Rushinsky, who was riding in the front passenger seat of the two-door car, let McNeill into the back. As McNeill directed, Fulton drove south on Massachusetts Avenue and headed for McNeill's residence, where McNeill stated he kept the crack cocaine. As they drove, McNeill asked Fulton for twenty dollars. Fulton replied: "No. * * * You know how it works. I want to see [the crack] first." Fulton and McNeill continued to argue about the money. When the trio reached McNeill's house, Fulton stopped the car. McNeill produced a gun, saying, "This is a stickup," and "I want the money." Fulton jumped from the car and ordered McNeill out. As Rushinsky leaned forward and opened his door, McNeill grabbed the keys from the ignition and jumped out.

{¶ 4} McNeill aimed his gun at Rushinsky and asked if he had any money. Rushinsky replied he had none. McNeill then pointed the gun at Fulton, saying,

"You don't think this gun's real?" and "You don't think this thing's loaded?" Fulton told McNeill to return his keys. After further argument, McNeill walked away. Fulton, who was a locksmith, got into his car and attempted to start it using his locksmith's tools.

{¶ 5} While Fulton was trying to start the car, McNeill returned. McNeill put his gun to Fulton's head, said, "Played me for a bitch," and shot Fulton. Fulton died several hours later.

{¶ 6} The grand jury indicted McNeill on one count of aggravated murder, R.C. 2903.01(B), with a robbery-murder specification, R.C. 2929.04(A)(7), and a firearm specification, R.C. 2941.141. In addition to Rushinsky, four young children who were playing nearby saw and heard many of the events surrounding the murder. The trial judge questioned the children, who were all under the age of ten, and determined they were competent to testify.

{¶ 7} The jury found McNeill guilty of aggravated murder with a robbery-murder specification. Following the penalty hearing, the jury recommended the death penalty. Consistent with the jury's recommendation, the trial judge imposed a death sentence. The court of appeals affirmed McNeill's conviction and sentence. McNeill now appeals to this court as of right.

———————————

*Gregory A. White*, Lorain County Prosecuting Attorney, and *Jonathan E. Rosenbaum*, Chief Counsel, Criminal Division, for appellee.

*Annette Powers* and *Renee Green*, for appellant.

———————————

**COOK, J.**

{¶ 8} In accordance with the mandate of R.C. 2929.05(A), we have reviewed each of McNeill's seventeen propositions of law, independently weighed the aggravating circumstance against the mitigating factors, and evaluated the

appropriateness and proportionality of the death penalty. For the following reasons, we affirm the judgment of the court of appeals.

I

{¶ 9} Repeatedly, we have held that R.C. 2929.05 does not require this court to address and discuss, in opinion form, each proposition of law raised in a capital appeal. See, *e.g., State v. Mitts* (1998), 81 Ohio St.3d 223, 226, 690 N.E.2d 522, 526; *State v. Keith* (1997), 79 Ohio St.3d 514, 684 N.E.2d 47; *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 351, 662 N.E.2d 311, 318. Many of McNeill's arguments either have been previously addressed, have been waived, or both. Accordingly, we reject McNeill's eighth, thirteenth, fourteenth, fifteenth, and seventeenth propositions of law, and portions of his eleventh, on the authority of *State v. Wilson* (1996), 74 Ohio St.3d 381, 387, 659 N.E.2d 292, 301; *State v. Phillips* (1995), 74 Ohio St.3d 72, 101, 656 N.E.2d 643, 669; *State v. Biros* (1997), 78 Ohio St.3d 426, 455, 678 N.E.2d 891, 915; *State v. Moore* (1998), 81 Ohio St.3d 22, 33 and 37, 689 N.E.2d 1, 12-13, 15-16; *State v. Brooks* (1996), 75 Ohio St.3d 148, 159-162, 661 N.E.2d 1030, 1040-1042; and *State v. Davis* (1996), 76 Ohio St.3d 107, 121, 666 N.E.2d 1099, 1111, respectively.

II

Felony-Murder

{¶ 10} In his first and second propositions of law, McNeill contends that he is not guilty of aggravated murder under R.C. 2903.01(B) and that the R.C. 2929.04(A)(7) death specification is inapplicable because the state failed to prove he killed Fulton *while* attempting to commit aggravated robbery.

{¶ 11} McNeill argues the attempted aggravated robbery ended the moment he walked away from Fulton's car. When McNeill returned and killed Fulton, the killing was "a new and separate crime" that did not occur *while* he was attempting to rob Fulton.

{¶ 12} The term "while" in R.C. 2903.01(B), Ohio's felony-murder statute, neither requires that the killing occur at the same instant as the predicate felony, nor requires that the killing be caused by the predicate felony. Rather, the killing must be directly associated with the predicate felony as part of one continuous occurrence. *State v. Cooey* (1989), 46 Ohio St.3d 20, 23, 544 N.E.2d 895, 903.

{¶ 13} Because the killing and predicate felony need not be simultaneous in order to constitute a felony-murder, the technical completion of one before the commission of the other does not remove a murder from the ambit of R.C. 2903.01(B). See, *e.g.*, *State v. Smith* (1991), 61 Ohio St.3d 284, 290, 574 N.E.2d 510, 516. "[T]he question whether [the defendant] killed before he stole or stole [or attempted to steal] before he killed is of no consequence." *State v. Palmer* (1997), 80 Ohio St.3d 543, 571, 687 N.E.2d 685, 709.

{¶ 14} The sequence of events in this case, examined in light of time, place, and causal connection, amounts to "one continuous occurrence." First, the attempted aggravated robbery and the killing were closely connected in time. Although the precise time lapse between McNeill's exit from Fulton's car and his return is unknown, a trier of fact could infer from the testimony of Rushinsky and Brittany Pasenow, one of the four child witnesses, that McNeill returned within a few minutes.

{¶ 15} Second, the two crimes occurred in the same place. Because McNeill took Fulton's keys, Fulton was unable to leave between the robbery attempt and the murder. Third, and most significant, the murder would not and could not have occurred but for the attempted robbery. Had McNeill not taken Fulton's keys in attempting the robbery, Fulton could (and presumably would) have driven away.

{¶ 16} McNeill also argues that robbery was not the *motive* for the killing, as shown by the fact he did not take Fulton's money after the shooting; rather, McNeill claims he shot Fulton because he felt humiliated. But R.C. 2903.01(B)

4

does not require that the felony be the motive for the killing. See *State v. Williams* (1996), 74 Ohio St.3d 569, 576-578, 660 N.E.2d 724, 732-733. McNeill cannot " 'escape the effect of the felony-murder rule' " by claiming that the murder was an unrelated "afterthought." See *Palmer,* 80 Ohio St.3d at 572, 687 N.E.2d at 709, quoting *State v. Biros* (1997), 78 Ohio St.3d 426, 451, 678 N.E.2d 891, 912.

{¶ 17} Our review indicates sufficient evidence supporting the jury's guilty verdict. On these particular facts, McNeill's brief departure before returning to murder Fulton is without legal significance. McNeill's first and second propositions of law are therefore overruled.

III

"Other Acts" Evidence

{¶ 18} In his third proposition of law, McNeill argues the state introduced evidence of "other acts" in violation of Evid.R. 404(B). Lorain Police Detective Arnie Berrios testified he arrested McNeill in 1992 for selling drugs at the corner of Massachusetts Avenue and G Street; McNeill possessed over twenty-five doses of crack at the time. The trial court properly instructed the jury it could not consider the testimony "to prove the character of the Defendant in order to show that he acted in accordance with that character," but could consider it in determining "identity and/or knowledge." Absent evidence to the contrary, we presume the jury followed these instructions. *State v. Woodard* (1993), 68 Ohio St.3d 70, 73-74, 623 N.E.2d 75, 78.

{¶ 19} Pursuant to Evid.R. 404(B), evidence of other acts, crimes, or wrongs is admissible to prove identity. *State v. Allen* (1995), 73 Ohio St.3d 626, 632, 653 N.E.2d 675, 683; *State v. Davis* (1991), 62 Ohio St.3d 326, 338, 581 N.E.2d 1362, 1374. In this case, Berrios's testimony was relevant to corroborate Rushinsky's identification of McNeill as the shooter. Rushinsky testified he and Fulton knew McNeill from prior drug purchases. However, on cross-examination the defense attacked Rushinsky's identification, forcing him to admit he initially

told police he never purchased drugs from McNeill. Berrios's testimony, which tended to show McNeill was in the business of selling drugs and his place of business was the corner of Massachusetts Avenue and G Street, served to rehabilitate Rushinsky. The testimony tended to make it more believable that Rushinsky spoke truthfully when testifying he previously purchased drugs from McNeill and therefore recognized him on the evening of May 13, 1994.

{¶ 20} McNeill further contends Berrios's testimony was unnecessary to prove identity because the four children also identified McNeill. However, need is irrelevant to an Evid.R. 404(B) objection; moreover, McNeill also attacked the reliability of the children's testimony.

{¶ 21} Because Berrios's testimony was admissible to prove identity under Evid.R. 404(B), McNeill's third proposition of law is overruled.

IV

Competency of Child Witnesses

{¶ 22} In his seventh proposition of law, McNeill contends Christopher Ryan and Ronald "Junior" George were incompetent to testify as witnesses. Christopher was seven years old at the time of the trial and Ronald was six.

{¶ 23} Evid.R. 601(A) provides: "Every person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."

{¶ 24} In determining the competence of a child witness, the trial court must consider the child's ability to receive, recall, and communicate accurate impressions of fact, understand truth and falsity, and appreciate the responsibility to tell the truth. *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483, syllabus. Because the trial court has the opportunity to observe the child's appearance, manner of responding to questions, general demeanor and ability to relate facts accurately and truthfully, its determination will not be reversed absent

6

an abuse of discretion. *Frazier*, 61 Ohio St.3d at 250-251, 574 N.E.2d at 486-487. See, also, *State v. Allard* (1996), 75 Ohio St.3d 482, 496, 663 N.E.2d 1277, 1290.

{¶ 25} Applying the foregoing to the record before us, we find no abuse of discretion by the trial court in determining the children were competent to testify. While the children could not answer every question posed, the transcript indicates they were in fact able to receive, recollect, and communicate impressions of fact, and appreciate the responsibility to be truthful.[1]

{¶ 26} Moreover, "[n]o federal court has held that the Constitution places limits on allowing even the youngest child to testify at trial," so long as the child is found to be competent. *Walters v. McCormick* (C.A.9, 1997), 122 F.3d 1172, 1176. Because the trial court did not abuse its discretion in finding Christopher and Ronald competent to testify, McNeill's seventh proposition of law is overruled.

V

Racial Underrepresentation on Venire

{¶ 27} In his sixteenth proposition of law, McNeill contends underrepresentation of African-Americans on the jury venire violated both the Sixth Amendment right to be tried by a jury representing a fair cross-section of the community, and the Fourteenth Amendment equal protection guarantee.

---

1. Christopher Ryan knew in what city he lived, who lived with him, his full name, the names of his mother, grandmother, and brother, and how old he and his brother were at the time of trial. Christopher also knew he was in the first grade, and although he could not name his school, he could name his teachers, knew what subjects he studied, and correctly recited the alphabet. Christopher knew what color his pants and the judge's robe were, accurately described the weather on the day he testified, and answered correctly when the judge asked how many fingers he was holding up. Furthermore, Christopher knew the difference between the truth and a lie, for he was able to correctly identify examples of each. He knew it was bad to lie because his mother told him he was not to tell lies, believed that he would "get in trouble" if he lied, and that "[y]ou'd go to jail" for lying in court.

Ronald George also knew with whom he lived, what school he attended, his teacher's name, his grade, and the name of a TV show he liked. He accurately described his clothing, the color of the judge's robe, and how many fingers the judge held up. Ronald, like Christopher, knew the difference between the truth and a lie. He stated that it was bad to lie, that he "would get in trouble" if he lied in court, and that his mother would "whip" him if he told a lie.

**{¶ 28}** McNeill first raised this issue during voir dire. After the jury was impaneled, McNeill renewed his objection, claiming underrepresentation because only two of the forty-seven persons questioned were African-American. The trial judge overruled McNeill's objection, finding "no evidence of systematic exclusion [and] no evidence that the group is not a fair and reasonable relation to the number of such persons in the community." Moreover, defense counsel admitted he could not show "systematic exclusion" of any group from the venire.

**{¶ 29}** The Sixth Amendment guarantee to a jury trial "contemplates a jury drawn from a fair cross section of the community." *Taylor v. Louisiana* (1975), 419 U.S. 522, 527, 95 S.Ct. 692, 696, 42 L.Ed.2d 690, 696. To establish a violation of this requirement, the "defendant must prove: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." *State v. Fulton* (1991), 57 Ohio St.3d 120, 566 N.E.2d 1195, paragraph two of the syllabus, citing *Duren v. Missouri* (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586-587.

**{¶ 30}** Other than his personal observations and those of defense counsel that the venire appeared imbalanced, McNeill failed to produce evidence demonstrating that African-Americans were underrepresented on the venire in relation to their percentage in the community. More important, McNeill did not produce, and defense counsel conceded he could not produce, any evidence of the systematic exclusion of African-Americans from the jury selection process employed in Lorain County.

**{¶ 31}** Moreover, McNeill's systematic-exclusion claim is based solely on alleged underrepresentation on *his* venire. But underrepresentation on a single venire is not *systematic* exclusion. See *Ford v. Seabold* (C.A.6, 1988), 841 F.2d

677, 685. Cf. *Duren*, 439 U.S. at 366, 99 S.Ct. at 669, 58 L.Ed.2d at 588 (discrepancy "not just occasionally, but in every weekly venire for a period of nearly a year" showed systematic exclusion).

{¶ 32} Turning to McNeill's equal protection claim, we base our analysis on the test set forth in *Fulton*:

"A defendant may also reasonably bring a federal equal protection challenge to the selection and composition of the petit jury by adducing statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose, an essential element of such cases." 57 Ohio St.3d at 123-124, 566 N.E.2d at 1200.

{¶ 33} The challenger must show underrepresentation over a significant period of time, and may " 'support[ ] the presumption of discrimination raised by the statistical showing' " by exposing the selection procedure as susceptible of abuse or racially partial. *Id.* at 122, 566 N.E.2d at 1199, quoting *Castaneda v. Partida* (1977), 430 U.S. 482, 494-495, 97 S.Ct. 1272, 1280-1281, 51 L.Ed.2d 498, 510-511.

{¶ 34} On these terms, McNeill's equal protection challenge also fails. McNeill did not attempt to show underrepresentation over a significant period of time: he points to only his own venire and indeed failed to show underrepresentation there. Accordingly, we overrule McNeill's sixteenth proposition of law.

VI

Voir Dire

{¶ 35} In his ninth proposition, McNeill contends six veniremen were improperly excused for cause due to their views on the death penalty. McNeill did not object to five of these excusals, preserving the issue only with respect to venireman Bader. See, *e.g., State v. Ballew* (1996), 76 Ohio St.3d 244, 253, 667 N.E.2d 369, 378-379.

{¶ 36} "The standard for determining whether a prospective juror may be excluded for cause due to his or her views on capital punishment is whether that prospective juror's views would ' "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." ' " *State v. Williams* (1997), 79 Ohio St.3d 1, 5, 679 N.E.2d 646, 653, quoting *Adams v. Texas* (1980), 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581, 589. We will reverse the trial court on voir dire matters only where the court has abused its discretion. *Id.* at 6, 679 N.E.2d at 653.

{¶ 37} Under the "prevent or substantially impair" test, we cannot hold the trial court abused its discretion in removing Bader for cause. After questioning by the court, the prosecution, and the defense, Bader stated: "I don't believe I could honestly say that I could put my name on a piece of paper saying I could give someone the death penalty. * * * [T]o make a decision * * * that would put a person to death * * * I don't think I could do it. In all honesty." Asked if his views on capital punishment were so strong they would substantially impair his ability to vote for a sentence of death, Bader replied, "In that case I would say yes, yes they are."

{¶ 38} In light of Bader's responses, the trial court did not err in finding that Bader's ability to follow the law was substantially impaired. See, *e.g.*, *State v. Keith* (1997), 79 Ohio St.3d 514, 519-521, 684 N.E.2d 47, 56. McNeill's ninth proposition of law is overruled.

## VII

### Victim-Impact Evidence

**{¶ 39}** In his fourth proposition, McNeill asserts the state impermissibly introduced victim-impact testimony into the guilt and penalty phases of his trial. During the guilt phase, the prosecutor made the following statement in closing argument:

"Blake Fulton was a human being. He had a family, you may have noticed, that sat through a lot of this trial. His picture is in his personal effects. He was a master locksmith. He had a life."

**{¶ 40}** In the absence of an objection, we limit our review of the prosecutor's comments to that standard established for plain error. *State v. White* (1998), 82 Ohio St.3d 16, 22, 693 N.E.2d 772, 778. In light of the other evidence adduced at trial, we hold the brief, general statements by the prosecutor that Fulton had a life, a job, and a family were not outcome-determinative, and therefore the admission of the statements was not plain error. See *State v. Davis* (1996), 76 Ohio St.3d 107, 118, 666 N.E.2d 1099, 1109.

**{¶ 41}** During the penalty phase of the trial, McNeill presented the testimony of Darnel Haney, his "Big Brother," in mitigation. Defense counsel asked if there was "any positive contribution that Freddie can make to society, to life in general, to his own life, if he were to be in prison." Haney replied that McNeill "has the ability to deal with people. I mean, he's a very humorous type of person. He brings a lot of joy. He brought a lot of joy to my life and people around."

**{¶ 42}** Over defense objection, the trial court permitted the state to present the testimony of Fulton's son in rebuttal. The prosecutor posed the following question: "Okay. There has been testimony in this case that the Defendant has brought joy to the lives of at least one person. Can you tell the jury what he's brought to you and your mother?" The boy replied "sadness." The boy further

testified he was sad "because he [McNeill] took my father away from me.  * * *
We used to go to baseball games and camp outs."

{¶ 43} In discharging its burden to prove, beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigation factors, see R.C. 2929.03(D)(1), the prosecution may contravene mitigation evidence by presenting "other evidence" pursuant to R.C. 2929.03(D)(2). *State v. DePew* (1988), 38 Ohio St.3d 275, 285-286, 528 N.E.2d 542, 554. See, also, *State v. Lundgren* (1995), 73 Ohio St.3d 474, 491, 653 N.E.2d 304, 322. Thus, in attempting to *refute or rebut the mitigating evidence offered*, relevant victim-impact evidence is permissible "other evidence."

{¶ 44} Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence. See *N.W. Graham & Co. v. W.H. Davis & Co.* (1854), 4 Ohio St. 362, 381; 6 Wigmore, Evidence (Chadbourn Rev.1976) 672-679, Section 1873. It is within the trial court's discretion to determine what evidence is admissible as proper rebuttal. *N.W. Graham & Co.,* 4 Ohio St. 362. See, also, *State v. Dunlap* (1995), 73 Ohio St.3d 308, 316, 652 N.E.2d 988, 996. In this instance, McNeill offered mitigating testimony of a broad nature: that he "brings a lot of joy.  He brought a lot of joy to * * * people around." McNeill thus opened the door to "other evidence" in rebuttal—evidence showing that McNeill did not bring joy to others. The trial court's decision permitting the state to rebut Haney's testimony by offering the contradictory testimony of Fulton's son was not "unreasonable, arbitrary or unconscionable." *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715, 719.

{¶ 45} Even assuming the boy's testimony was improper rebuttal and thus its admission error, the error would be harmless. The use of victim-impact evidence during the penalty phase of a capital case is not a constitutional violation. *Payne v.*

*Tennessee* (1991), 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720. See, also, Section 10a, Article I, Ohio Constitution. Its admission constitutes a violation, if at all, of Ohio's statutory scheme. Thus, the standard for errors of a nonconstitutional nature would apply to the testimony at issue. "Nonconstitutional error is harmless if there is substantial other evidence to support the * * * verdict." *State v. Webb* (1994), 70 Ohio St.3d 325, 335, 638 N.E.2d 1023, 1032.

{¶ 46} In this case, there was ample evidence to support the jury's recommendation. Moreover, the boy's testimony was brief, not highly emotional, and, essentially, cumulative. The jury was aware Fulton had a family; testimony that the family was saddened by his death provided nothing that the jury would not have assumed to be true. Accordingly, any error in the admission of the testimony would be harmless.

VIII

Prosecutorial Misconduct

{¶ 47} McNeill's fourth proposition, divided into several subparts, also claims further instances of prosecutorial misconduct.

{¶ 48} In Part A(1), McNeill claims that introducing testimony about his prior drug arrest was misconduct. We rejected this argument in our discussion of McNeill's third proposition, above.

{¶ 49} In Part A(2), McNeill claims the prosecutor committed misconduct by asking Kimberly Sanford whether McNeill sold drugs. However, Sanford replied she did not know. Hence, no prejudicial evidence was elicited. Furthermore, the prosecutor had a good-faith basis for asking the question. See *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272, paragraph two of the syllabus, overruled on other grounds, *State v. McGuire* (1997), 80 Ohio St.3d 390, 686 N.E.2d 1112.

{¶ 50} In Parts A(3) and A(4), McNeill claims prosecutorial misconduct in the guilt phase closing argument. McNeill did not object to any part of the closing

argument. Thus, the alleged improprieties in the prosecutor's remarks are waived absent plain error. *State v. White* (1998), 82 Ohio St.3d 16, 22, 693 N.E.2d 772, 778. Our review of the comments at issue does not reveal plain error. Taken in context, the prosecutor's statement that the state's case was "uncontradicted" was not a comment on the defendant's failure to testify. Additionally, the prosecutor stated that despite claims by the defense that the state lacked evidence, if the jury determined the state met its burden it would make "no difference" that "a ton more" could have been presented "if we'd have done the case the way someone else would have done it." We find no plain error in arguing to the jury that only the evidence presented should be considered, not what might have been available.

{¶ 51} In the penalty phase, McNeill objected to the prosecutor's use of the word "assassinate" to characterize the murder; the trial court sustained his objection and asked counsel to rephrase the question. The record shows the word is consistent with the evidence adduced at trial; Rushinsky testified McNeill suddenly and unexpectedly put his gun to the back of Fulton's head and pulled the trigger. The physical evidence corroborated this testimony. Thus, the prosecutor's word choice was not prejudicial misconduct. See *White*, 82 Ohio St.3d at 22-23, 693 N.E.2d at 779.

{¶ 52} McNeill objected to none of the other alleged instances of penalty-phase misconduct. We have reviewed each statement and find no plain error; these issues are therefore waived. *Id.* at 22, 693 N.E.2d at 778. See, also, *State v. Hill* (1996), 75 Ohio St.3d 195, 201-202, 661 N.E.2d 1068, 1076-1077; *State v. Gumm* (1995), 73 Ohio St.3d 413, 422, 653 N.E.2d 253, 263. McNeill's fourth proposition is overruled.

IX

Ineffective Assistance

{¶ 53} In his sixth proposition of law, McNeill claims ineffective assistance of counsel. We review these claims under the now-familiar standard set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 690-691, 694, 104 S.Ct. 2052, 2064, 2066, 2068, 80 L.Ed.2d 674, 693, 695-696, 698. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373, 379-381.

{¶ 54} McNeill argues counsel were deficient in failing to object to the prosecutor's voir dire references to imposing the death penalty in "this case" on "that man"; to guilt-phase instructions defining "reasonable doubt" and "recklessness"; to the reintroduction of all guilt-phase evidence in the penalty phase; and to the penalty-phase instruction to consider "the nature and circumstances of the aggravating circumstance." However, these objections were not supported by—indeed, most were inconsistent with—existing law. See *State v. Gumm*, 73 Ohio St.3d at 419, 653 N.E.2d at 261, and syllabus; *State v. Lorraine* (1993), 66 Ohio St.3d 414, 421-422 and 424-425, 613 N.E.2d 212, 219 and 221; *State v. DePew* (1988), 38 Ohio St.3d 275, 282-283, 528 N.E.2d 542, 552; *State v. Young* (1988), 37 Ohio St.3d 249, 252-253, 525 N.E.2d 1363, 1368-1369, reversed on other grounds *Osborne v. Ohio* (1990), 495 U.S. 103, 125-126, 110 S.Ct. 1691, 1705, 109 L.Ed.2d 98, 119-120; *State v. Nabozny* (1978), 54 Ohio St.2d 195, 8 O.O.3d 181, 375 N.E.2d 784, paragraph two of the syllabus, sentence vacated on other grounds *Nabozny v. Ohio* (1978), 439 U.S. 811, 99 S.Ct. 70, 58 L.Ed.2d 103. Defense counsel is not required to advance arguments lacking merit. See, *e.g., State v. Keene* (1998), 81 Ohio St.3d 646, 668, 693 N.E.2d 246, 264. It is not ineffective assistance for a trial lawyer to maneuver within the existing law, declining to present untested or rejected legal theories.

{¶ 55} McNeill also argues his counsel failed to file a pretrial motion to dismiss the death specification on the basis that the Ohio death penalty scheme is

unconstitutional and the felony-murder specification duplicates the elements of aggravated murder under R.C. 2903.01(B). We have rejected these arguments before. See, generally, *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768.

{¶ 56} McNeill maintains his counsel failed to object to the excusal for cause of veniremen Snitzer, Bader, Reed, Candelario, and Turner. Applying the standard in *State v. Williams* (1997), 79 Ohio St.3d 1, 679 N.E.2d 646, the record shows a substantial basis for excusing all five.

{¶ 57} McNeill further contends counsel "wasted" peremptories on two veniremen whom he should have challenged for cause. The use of peremptory challenges is a matter of strategy. Debatable trial tactics do not constitute ineffective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 16 O.O.3d 35, 37, 402 N.E.2d 1189, 1192. Additionally, our review of the record indicates no cause for challenging these veniremen.

{¶ 58} McNeill also claims he was prejudiced by counsel's failure to make a timely objection to the venire's alleged racial imbalance. Because the trial court considered the objection despite its tardiness, any such error was nonprejudicial.

{¶ 59} During her direct examination, state's witness Terjen Russell testified to the facts of the shooting and to McNeill's eventual hiding place. McNeill argues defense counsel's failure to object to this testimony as hearsay was prejudicial. However, the prosecutor immediately established Terjen's knowledge of these matters was based on hearsay, and cautioned her to "only tell us what you saw." Moreover, the testimony in question was merely cumulative, and could be viewed as impeaching Terjen by displaying her lack of personal knowledge. Because the unreliability of the child witnesses was a key theme in defense closing arguments, we cannot hold defense counsel's failure to object was a professionally unreasonable choice.

16

{¶ 60} McNeill also contends his counsel incompetently cross-examined Terjen, thereby bringing damaging information to the jury's attention. When asked how she knew McNeill, Terjen replied McNeill had in the past thrown beer bottles at her. McNeill claims this demonstrates counsel's failure to adequately investigate the case. Such an inference is speculative at best, as counsel actually used the testimony to impeach Terjen by suggesting she was personally biased against McNeill.

{¶ 61} According to McNeill, "[c]ounsel failed to object when the trial court instructed that appellant's purpose to kill was presumed from the predicate facts of the offense." McNeill further claims "[a] similar error infected the court's instruction on 'knowledge.' " The trial court gave no such instructions.

{¶ 62} McNeill also complains his counsel failed to object to the guilt-phase instructions on causation and foreseeability. The instructions, however, were not improper. See *State v. Phillips* (1995), 74 Ohio St.3d 72, 100, 656 N.E.2d 643, 668.

{¶ 63} McNeill argues counsel failed to request instructions on lesser included offenses and lesser penalties at both the guilt and penalty phases. We reject this argument based upon *State v. Keenan* (1998), 81 Ohio St.3d 133, 139-140, 689 N.E.2d 929, 939, and *State v. Brooks* (1996), 75 Ohio St.3d 148, 162, 661 N.E.2d 1030, 1042.[2]

{¶ 64} McNeill maintains he was prejudiced by defense counsel's failure to object to the state's closing argument. However, an attorney may reasonably elect not to interrupt opposing counsel's argument. See *State v. Keene* (1998), 81 Ohio St.3d 646, 668, 693 N.E.2d 246, 264.

---

2. Although the decision in *Brooks* postdates McNeill's trial, the jury instructions given in McNeill's case nevertheless withstand scrutiny under *Brooks*. See, also, *State v. Davis* (1996), 76 Ohio St.3d 107, 116-118, 666 N.E.2d 1099, 1108-1109.

**{¶ 65}** In the penalty phase, McNeill claims defense counsel were ineffective in requesting a mental examination under R.C. 2929.03(D)(1). McNeill contends that by instead requesting the expert assistance of a psychologist under R.C. 2929.024, counsel could avoid the R.C. 2929.03(D)(1) requirement that the reports of the mental examination be submitted to the court and jury.

**{¶ 66}** McNeill, however, has not persuasively shown prejudice. First, R.C. 2929.024 authorizes expert assistance only if the court determines the requested assistance is "reasonably necessary for the proper representation of [the] defendant." McNeill does not argue the necessity of the expert's assistance. Also, if the defense offered the testimony of an expert appointed under R.C. 2929.024, any reports would be discoverable by the state. Crim.R.16(C)(1)(b).

**{¶ 67}** McNeill's claim of prejudice based on "derogatory information" contained in the psychologist's report is also groundless. His three examples of "derogatory information" are unimpressive. First, Dr. Sandra McPherson described McNeill as "angry"; second, she wrote that "[b]y the age of 14, Fredd[ie] was essentially out of control"; third, she mentioned McNeill had "apparently supported himself through his activity on the streets." Each of these statements was consistent with evidence already before the jury. McPherson's report told the jury nothing derogatory that was not already in evidence. More important, the overall content of McPherson's report was helpful to McNeill. The report stated McNeill had borderline intelligence, a history of substance abuse, and learning and behavioral problems. In her testimony, McPherson concluded McNeill could make a positive contribution in prison.

**{¶ 68}** We therefore see no prejudice to McNeill in counsel's use of R.C. 2929.03(D)(1) instead of R.C. 2929.024 to obtain expert assistance. The choice does not, under the facts of this case, undermine confidence in the result of the proceeding. See *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

**{¶ 69}** McNeill also claims defense counsel rendered ineffective assistance in ordering a presentence investigation ("PSI") under R.C. 2929.03(D)(1). Again, McNeill contends this exposed the jury to derogatory information, including McNeill's criminal record. However, it is not ineffective assistance to request a PSI where the record does not rebut the presumption that counsel acted reasonably. See *State v. Hutton* (1990), 53 Ohio St.3d 36, 42, 559 N.E.2d 432, 441. Moreover, the record demonstrates McNeill wanted the PSI although his counsel disagreed whether it was advisable. It is not ineffective assistance for counsel to accede to a client's wishes after advising the client of counsel's contrary opinion. 2 LaFave & Israel, Criminal Procedure (1984) 59, Section 11.6(b), fn. 31. See *State v. Keith* (1997), 79 Ohio St.3d 514, 529-530, 684 N.E.2d 47, 62-63. (It is not ineffective *per se* to fail to present mitigating evidence in compliance with the client's demand, quoting *State v. Johnson* [1986], 24 Ohio St.3d 87, 91, 24 OBR 282, 286, 494 N.E.2d 1061, 1065.) See, also, *United States v. Bridgeman* (C.A.D.C.1975), 523 F.2d 1099, 1118.

**{¶ 70}** McNeill argues the record is silent regarding counsel's advice on the matter. However, the burden of showing ineffective assistance is McNeill's. The record reflects counsel's representation to the court that despite his explanation to McNeill that a PSI was imprudent, McNeill desired the PSI; McNeill verbally agreed with this representation in open court, and presents no evidence to the contrary.

**{¶ 71}** Because we do not find that McNeill's trial counsel fell below an objective standard of reasonable representation or that McNeill was prejudiced by counsel's performance, his sixth proposition of law is overruled.

X

Appointed Counsel

**{¶ 72}** In his fifth proposition of law, McNeill claims the trial court erred in refusing to replace his court-appointed counsel because there was " 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.' " *State v. Coleman* (1988), 37 Ohio St.3d 286, 292, 525 N.E.2d 792, 798-799, quoting *People v. Robles* (1970), 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 173, 466 P.2d 710, 717. There is no constitutional right to a "meaningful attorney-client relationship." *Morris v. Slappy* (1983), 461 U.S. 1, 13-14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610, 621. There is only a right to professionally competent, effective representation.

**{¶ 73}** McNeill submitted to the trial judge his motion to replace counsel after the jury was impaneled and immediately before opening statements were to begin. He claimed his attorneys communicated with him only once following their appointment, and refused to obtain information for him or to place two requested witnesses on the witness list.

**{¶ 74}** Defense counsel stated they met with McNeill between one and two dozen times, spoke with him on the phone, and gave him copies of all discovery. Also, counsel in fact listed one of the two witnesses McNeill wanted, and stated that McNeill withdrew his request for the other.

**{¶ 75}** The trial court found that, given the timing, McNeill's motion was made for the purpose of delay. Furthermore, notwithstanding several previous opportunities, McNeill did not bring the alleged problem to the court's attention until immediately before opening statements.

**{¶ 76}** It was within the trial court's discretion to decline to replace appointed counsel. See *State v. Downs* (1977), 51 Ohio St.2d 47, 61-62, 5 O.O.3d 30, 38, 364 N.E.2d 1140, 1149, sentence vacated on other grounds, *Downs v. Ohio* (1978), 438 U.S. 909, 98 S.Ct. 3133, 57 L.Ed.2d 1153. McNeill's factual claims

were disputed, and the timing of his motion made it reasonable to conclude his purpose was delay. Finding no abuse of discretion by the trial court, we overrule McNeill's fifth proposition of law.

## XI

## Other Issues

{¶ 77} In his eleventh proposition, McNeill argues factual errors in the trial court's sentencing opinion require reversal of his death sentence. We disagree.

{¶ 78} The trial court's opinion stated that after McNeill left Fulton's car, he "returned and again demanded the money. The victim refused and the Defendant then placed the firearm to the victim's head and fired * * *." We agree with McNeill that this was inaccurate: there was no evidence that McNeill "again demanded the money" *after* he returned to Fulton's car. However, "[w]hile these statements are not supported by the record, this court's independent review can correct that problem by not relying on them." *State v. Davis*, *supra*, 76 Ohio St.3d 107, 121, 666 N.E.2d 1099, 1111. McNeill's eleventh proposition is therefore overruled.

{¶ 79} McNeill's twelfth proposition claims that language in R.C. 2929.03(D)(1) providing for consideration of the "nature and circumstances of the aggravating circumstances" is unconstitutionally vague in violation of the Eighth and Fourteenth Amendments to the United States Constitution, thereby giving "the sentencer unfettered discretion to weigh a statutory mitigating factor [see R.C. 2929.04(B): 'the nature and circumstances of the offense'] as an aggravator." McNeill contends the language in R.C. 2929.03(D)(1) impermissibly incorporates R.C. 2929.04(B) mitigating factors, making them "part and parcel of the aggravating circumstance."

{¶ 80} We overrule this proposition based on *Tuilaepa v. California* (1994), 512 U.S. 967, 973-980, 114 S.Ct. 2630, 2635-2639, 129 L.Ed.2d 750, 760-765, and *State v. Gumm* (1995), 73 Ohio St.3d 413, 416-423, 653 N.E.2d 253, 259-264. We

do not find the statutory language at issue, or the concepts it conveys, unconstitutionally vague. The reasoning employed in *Gumm* clarified that the "nature and circumstances of the aggravating circumstances" referred to in R.C. 2929.03(D)(1) are separate and distinct from the "nature and circumstances of the offense" referred to in 2929.04(B). *Id.* at 416-423, 653 N.E.2d at 259-264. See, also, *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 352-355, 662 N.E.2d 311, 318-321; *State v. Hill* (1996), 75 Ohio St.3d 195, 199-201, 661 N.E.2d 1068, 1075-1076. Accordingly, McNeill's twelfth proposition is overruled.

XII

Independent Sentence Review

{¶ 81} In his tenth proposition of law, McNeill contends the aggravating circumstance does not outweigh the mitigating factors, and the death sentence is disproportionate to sentences imposed in similar cases. We must resolve these issues pursuant to our statutorily mandated independent review. R.C. 2929.05(A).

{¶ 82} Of the mitigating factors listed in R.C. 2929.04(B)(1)-(6), McNeill offers his youth (R.C. 2929.04[B][4]) and Fulton's involvement in an illegal drug transaction (R.C. 2929.04[B][1]). Under the R.C. 2929.04(B)(7) provision for "any other factors that are relevant," McNeill enumerates the following: (1) dyslexia and attention deficit hyperactivity disorder ("ADHD"); (2) borderline intelligence; (3) his parents' divorce and abandonment by his father; (4) the negative influence exerted by his alcoholic, violent father and his father's relatives; (5) his own alcohol and drug abuse; (6) his status as the father of an illegitimate child for whom he did "as much as he could"; and (7) according to McPherson, the psychologist who examined McNeill, his inability "to manage the demands of daily living on his own where they involve reading." McPherson also believed McNeill could make a positive contribution in prison.

{¶ 83} McNeill was nineteen when he murdered Fulton. This establishes youth as a mitigating factor under R.C. 2929.04(B)(4). Yet the offender's youth is

not always entitled to great weight. In assessing the weight of the (B)(4) mitigating factor, it is appropriate to take into account a defendant's experience and maturity. *State v. Cooey*, 46 Ohio St.3d at 39-40, 544 N.E.2d at 918. McNeill, although young, was an experienced drug dealer who for some years supported himself by means of this illegal occupation.

{¶ 84} While it did not rob him of his capacity for choice, there was some evidence that ADHD would impair McNeill's ability to control his impulses. On cross-examination, however, McPherson's testimony and the reliability of her diagnosis were called into question.

{¶ 85} The influence of McNeill's fraternal relatives and the lack of a father figure, although relevant, are offset by the positive influence of his mother and Darnel Haney, McNeill's "Big Brother." McNeill had a choice between good and bad influences; he chose the bad.

{¶ 86} Finally, McNeill claims Fulton contributed to his own death by participating in an illegal drug transaction. "[T]he unlawful taking of a human life cannot be deemed less serious simply because the victim was involved in unlawful activity." *State v. Williams* (1997), 79 Ohio St.3d 1, 18, 679 N.E.2d 646, 661. Consequently, we believe that "no significant mitigating weight need be assigned to this factor." *State v. Green* (1993), 66 Ohio St.3d 141, 153, 609 N.E.2d 1253, 1263.

{¶ 87} Against the mitigating factors McNeill cites we must weigh the aggravating circumstance that the murder was committed while McNeill attempted to commit aggravated robbery. R.C. 2929.04(A)(7). The evidence supports the jury's finding of this aggravating circumstance. Furthermore, considering the nature and circumstances of the aggravating circumstance, R.C. 2929.03(D)(1) and *Gumm*, 73 Ohio St.3d at 422-423, 653 N.E.2d at 264, we find that in this case the aggravating circumstance carries substantial weight. All murders involve violence, but to this McNeill added treachery — luring Fulton to his home for a pretended

drug deal, attempting to rob him, and detaining him by taking his keys. Indeed, there was evidence that even *after* the failed robbery attempt, McNeill tried to detain Fulton by deceit, telling him to wait because "I got something for you."

{¶ 88} Accordingly, we find that the weight of the aggravating circumstance outweighs beyond a reasonable doubt the modest mitigating factors adduced.

{¶ 89} Comparing McNeill's sentence to those imposed in similar capital cases, we conclude that the death penalty is appropriate and proportionate. We have consistently approved death sentences in robbery-murder cases. See, *e.g.*, *State v. Allen* (1995), 73 Ohio St.3d 626, 644, 653 N.E.2d 675, 691; *State v. Hill* (1995), 73 Ohio St.3d 433, 448, 653 N.E.2d 271, 284; *State v. Mills* (1992), 62 Ohio St.3d 357, 377-378, 582 N.E.2d 972, 989.

{¶ 90} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

_____

APPENDIX

{¶ 91} "*PROPOSITION OF LAW NO. I*

"Aggravated murder is not committed 'while' the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit aggravated robbery, under R.C. 2903.[01](B) and 2929.04(A)(7), when the two acts are not part of the same transaction."

{¶ 92} "*PROPOSITION OF LAW NO. II*

"A conviction of the specification of having committed aggravated murder while committing or attempting aggravated robbery, R.C. 2929.04(A)(7), may not stand when as a matter of law, there is insufficient evidence to support it."

{¶ 93} "*PROPOSITION OF LAW NO. III*

"It is prejudicial error to admit evidence of other criminal acts previously committed by the defendant to show the defendant acted in conformity therewith."

{¶ 94} "*PROPOSITION OF LAW NO. IV*

"Pronounced, persistent state misconduct which so infects the trial as to destroy its fundamental fairness amounts to a denial of due process and calls for a reversal."

{¶ 95} "*PROPOSITION OF LAW NO. V*

"A motion to replace appointed counsel must be granted when there is a break down in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to the effective assistance of counsel."

{¶ 96} "*PROPOSITION OF LAW NO. VI*

"The defendant's right to the effective assistance of counsel is denied when the defendant is prejudiced by counsel's deficient performance."

{¶ 97} "*PROPOSITION OF LAW NO. VII*

"It is an abuse of discretion and a violation of the United States Constitution to allow children under the age of ten to testify when they cannot receive accurate

impressions of facts, recall facts known to them or appreciate their responsibility to tell the truth."

{¶ 98} "*PROPOSITION OF LAW NO. VIII*

"The presumption of innocence is destroyed when prospective jurors are asked whether they could impose the death penalty upon this defendant."

{¶ 99} "*PROPOSITION OF LAW NO. IX*

"A prospective juror in a capital case is subject to a challenge for cause only if he or she is unequivocally opposed to capital punishment and if the juror refuses to consider capital punishment under any circumstances."

{¶ 100} "*PROPOSITION OF LAW NO. X*

"A death sentence is disproportionate [*sic*] severe when given for a crime whose facts are far less heinous than those in similar cases where the death penalty was imposed."

{¶ 101} "*PROPOSITION OF LAW NO. XI*

"A capital defendant has a protected liberty interest in a reliable review of his death sentence by the trial court."

{¶ 102} "*PROPOSITION OF LAW NO. XII*

"R.C. 2929.03(D)(1) and R.C. 2929.04 are unconstitutionally vague in violation of the Eighth and Fourteenth Amendments to the United States Constitution."

{¶ 103} "*PROPOSITION OF LAW NO. XIII*

"R.C. 2929.04(B)(7) is unconstitutionally vague and may be understood by jurors as reasons for imposing the death penalty."

{¶ 104} "*PROPOSITION OF LAW NO. XIV*

"Ohio's capital sentencing law is unconstitutional on its face and as applied to appellant."

{¶ 105} "*PROPOSITION OF LAW NO. XV*

"The Due Process Clause is violated by a jury charge which permits a criminal conviction of proof of less than beyond a reasonable doubt."

{¶ 106} "*PROPOSITION OF LAW NO. XVI*

"Substantially [*sic*] underrepresentation of African-Americans on a jury establishes a *prima facie* case of purposeful exclusion of African-Americans from the panel."

{¶ 107} "*PROPOSITION OF LAW NO. XVII*

"Failure to charge the jury properly on a lesser included offense in a capital murder sentencing phase requires reversal of the death penalty."