OPINION
Defendant-appellant Tawann Smalls appeals his convictions and sentences on six counts of felonious assault, in violation of R.C. 2903.11, each with a firearm specification, and one count of having weapons while under disability, in violation of R.C. 2923.13, following a jury's verdict of guilty. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On December 23, 1999, the Stark County Grand Jury indicted appellant on the aforementioned charges. At his arraignment on December 30, 1999, appellant entered pleas of not guilty to all the charges. The matter proceeded to jury trial on April 18, 2000. After the trial court addressed the prospective jurors, Attorney Stanley Tolliver, appellant's trial counsel, asked to approach the bench. Attorney Tolliver raised his concerns regarding the fact there were no African-Americans on the venire and appellant is an African-American. Attorney Tolliver requested the trial court assemble another panel. The trial court denied his request, but noted appellant's objection on the record. Thereafter, a jury was empaneled and the State presented its case.
Officer Nick Mercorelli of the Canton Police Department testified at approximately 10:00 p.m. on December 14, 1999, he and his partner, Officer Mark Diels, acquired information regarding drug activity at a residence located on the northwest corner of 7th Street and Jones Court in Canton, Ohio. This information supplemented information the Department had gathered during a six week investigation of the residence and its occupants. Upon receiving the information, Officer Mercorelli contacted two other patrol vehicles to assist him and his partner in responding to the location. Officers Mercorelli and Diels, as well as Officers James Meyers, Jason Gaug, Joseph Mongold, and Eric Stanbro parked their cruisers two blocks away from the residence. As they approached the residence, Officer Mercorelli observed an individual in a back alley. Mercorelli observed Officer Meyers address the individual. Immediately thereafter, Mercorelli heard a sound like somebody running or shouting, and saw Officers Meyers, Gaug, and Diels running toward the individual. Appellant was ultimately identified as this individual. Officer Mercorelli observed appellant run northbound onto Queen Court with the three officers in pursuit. After hearing several gun shots, Officers Mercorelli, Mongold, and Stanbro ran northbound toward the sound. As the officers ran toward 8th Street, Officer Mercorelli observed appellant lean over and fire several shots at him and Officers Stanbro and Mongold. Because Officers Meyers, Gaug, and Diels were still in pursuit, Officer Mercorelli proceeded in another direction in order to prevent the surrender of the perimeter. The officer did not see appellant again until he had been apprehended by the other officers.
Officers Stanbro and Mongold testified similarly to Officer Mercorelli. Both officers testified they observed appellant, who was running north on 8th Street, lean over and across and fire three rounds toward them. Officer Mongold also testified he and Officer Gaug ultimately wrestled appellant to the ground in order to handcuff him.
Officer Jason Gaug also testified for the State. Officer Gaug recalled he observed appellant in an alley as he and the other officers approached the suspect residence. The officers called to appellant to come and speak with them. Appellant stopped, looked at the officers, mumbled and ran around the corner. Officers Gaug, Meyers, and Diels pursued appellant on foot. As appellant headed northbound on Queen Court, he fired approximately three shots at the officers. When Officer Gaug attempted to apprehend appellant, he fought with the officer. Appellant punched, kicked, and struggled in an attempt to prevent the officer from handcuffing him.
Officer Diels and Meyers testified similarly to Officer Gaug.
Donna Nash, a resident of the neighborhood, testified she observed a flash outside her bedroom window, which faces onto Queen Court. Nash heard two gunshots, and shortly thereafter, heard three additional gunshots. On cross-examination, Nash acknowledged she did not see who fired the shots.
James Nash, her husband, also testified. As James Nash was falling asleep, he heard what sounded like two gunshots. He rolled over toward his bedroom window, and pulled aside the curtain. He observed a figure dressed in dark clothing running north on Queen Court. Approximately fifteen to thirty seconds later, James Nash heard three additional gunshots. James Nash described the shooter as somewhere between 5'10" and 6', 200 pounds.
John Clark, a canine officer with the Canton Police Department, testified he and his partner, "Magnum," a German Shepard, were on duty during the late evening hours of December 14, 1999, when they responded to a call to do a track in the 700 to 800 block of Queen Court. Magnum ultimately discovered a handgun in the backyard of 817 High Street, NW.
Michael Short, a criminalist with the Canton/Stark County Crime Lab, testified he conducted an examination of a .380 semiautomatic pistol, the firearm discovered by Magnum. Short found no latent fingerprints of comparison value on the gun. Further testing revealed the firearm was operable. With respect to the spent cartridges uncovered during the investigation, Short testified these cartridges were fired from the same firearm and had been fired from the gun he had examined in this matter. Through his examination, Short was unable to determine whether or not appellant had handled the particular firearm.Upon the conclusion of the Michael Short's testimony, the State rested. Appellant did not present any witnesses and rested its case. Appellant made an oral motion for an acquittal, which the trial court overruled.
After hearing all the evidence and deliberations, the jury found appellant guilty of all the counts contained in the indictment. The trial court sentenced appellant to a total of nineteen years imprisonment. The trial court memorialized the verdicts and sentences via Judgment Entry filed April 27, 2000.
It is from these convictions and sentences appellant prosecutes his appeal, raising the following assignments of error:
 I. THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO BE TRIED BY A JURY OF HIS PEERS WHEN NO AFRICAN AMERICAN WAS INCLUDED IN THE JURY POOL OF PROSPECTIVE JURORS, THUS DENYING HIM AN IMPARTIAL JURY UNDER ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION.
 II. THE APPELLANT WAS DENIED DUE PROCESS OF LAW GUARANTEED HIM BY THE FIFTH AND FOURTEENTH AMENDMENTS DUE TO THE FACT THAT HIS CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In his first assignment of error, appellant contends he was denied his constitutional right to be tried by a jury of his peers because the pool of prospective jurors did not include any African-Americans, thereby, also denying him his constitutional right to be tried by an impartial jury.
In State v. McNeill (1998), 83 Ohio St.3d 438, the Ohio Supreme Court addressed an identical situation to the matter sub judice. In overruling the appellant's constitutional challenges to the under representation of African-Americans on his jury venire, the McNeill Court stated:
 The Sixth Amendment guarantee to a jury trial "contemplates a jury drawn from a fair cross section of the community." Taylor v. Louisiana (1975), 419 U.S. 522, 527 * * *. To establish a violation of this requirement, the "defendant must prove: (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." State v. Fulton
(1991), 57 Ohio St.3d 120, * * * paragraph two of the syllabus, citing Duren v. Missouri (1979), 439 U.S. 357, 364 * * *. (Parallel citations omitted.)
Id. at 443-444.
In the instant action, upon the conclusion of the trial court's initial address to the prospective jurors, Attorney Tolliver raised his concerns about the non-representation of African Americans in the venire. The trial court noted Attorney Tolliver's concerns as an objection, but denied his request to assemble another panel.
We find appellant has established the first prong of the Duren test as set forth in McNeill, supra, because African Americans are a distinct group in the community. However, we find appellant cannot establish the second and third prongs of the Duren test.With respect to the second prong, appellant informs this Court African Americans comprise ten percent of the population; therefore, this percentage of African Americans must be included in any jury pool. However, appellant has not produced any evidence to support this figure or to establish the representation of African Americans in venires in Stark County is unfair and unreasonable in relation to this percentage. Furthermore, appellant has not produced any evidence of the systematic exclusion of African Americans from the jury selection process utilized in Stark County. See, Ford v. Seabold
(C.A.6, 1988), 841 F.2d 677, 685 (Under representation on a single venire is not systematic exclusion). Accordingly, we find appellant has failed to demonstrate his particular venire or Stark County venires, in general, violate the requirement that venires represent a cross section of the community.
Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant raises a manifest weight of the evidence claim. Specifically, appellant asserts the State failed to prove the culpable mental state of "knowingly" with respect to the felonious assault charges.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
Appellant was convicted of felonious assault, in violation of R.C.2903.11, which provides:
 (A) No person shall knowingly do either of the following:
 (1) Cause serious physical harm to another or to another's unborn;
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
Appellant asserts the evidence does not establish any of the police officers were hit or came close to being hit by the gun fire. Additionally, appellant submits the evidence does not indicate the gunshots were fired directly at the officers.
The term "knowingly" is defined as follows:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
In the instant action, the State presented the testimony of the six officers involved in the incident with appellant. Officer Nick Mercorelli testified as appellant ran northbound, he leaned over and fired several shots directly at him, as well as Officers Stanbro and Mongold. Officers Stanbro and Mongold testified similarly, stating appellant leaned over and across as he fired three rounds toward the officers. Likewise, Officers Gaug and Diels testified appellant fired at them.
Based upon the foregoing and the entire record in this matter, we find appellant's convictions were not against the manifest weight of the evidence.
Appellant's second assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
Hoffman, J. Edwards, P.J. and Farmer, J. concur.