[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Carlton A. Powell, appeals from his conviction and sentence in the Lake County Court of Common Pleas on a charge of possession of marijuana, R.C. 2925.11(C)(3)(f), a felony of the second degree.
The following evidence was presented during the case-in-chief of appellee, the State of Ohio. On March 21, 1997, law enforcement personnel stopped a tractor-trailer in Kentucky that was carrying eight hundred pounds of marijuana. Upon interrogation of the two occupants of the semitrailer, law enforcement authorities in Kentucky learned that the tractor-trailer was to be used in consummating a drug transaction in Lake County, Ohio. The Kentucky office of the Drug Enforcement Administration ("DEA") contacted Special Agent John Clayton of the Cleveland DEA office and informed him of the upcoming drug sale in Lake County. Special Agent Clayton then contacted numerous local law enforcement agencies, including the Ohio State Highway Patrol, the Lake County Narcotics Agency, and the Willoughby Hills Police Department, and informed them of the transaction that would take place that evening.
The plan was to attempt to make a controlled delivery of the contents of the tractor-trailer at a closed truck weighing station on Interstate 90 in Willoughby Hills, Ohio. Through the assistance of a Kentucky law enforcement officer, the occupants of the semitrailer contacted the person who was to receive the marijuana.
The police operation included several officers inside the building at the closed weighing station, one of whom was Special Agent 56 of the Lake County Narcotics Agency. Special Agent 56 testified that approximately one hour after the tractor-trailer parked in the driveway of the weighing station, a Ford Explorer with a female driver and a male passenger, later identified as appellant, pulled in front of the semitrailer.
Appellant exited the passenger side of the sport utility vehicle empty handed and walked back to the passenger side of the tractor-trailer. Special Agent 56 was positioned in a manner that she could not see appellant when he walked beside the semitrailer. After staying at the side of the tractor trailer for a few seconds, appellant returned carrying a large, dark duffel bag. He placed the bag into the back of the Explorer. Appellant then returned to the side of the tractor-trailer, reappeared with another large, dark duffel bag, and again placed it into back of the Explorer. Appellant then began to walk back to the tractor-trailer again when law enforcement personnel approached appellant and the driver of the Explorer and placed them under arrest. Special Agent 56 noted that two bags were located in the back of the Explorer and two more bags were on a grassy area beside the semitrailer.
Special Agent 63 of the Lake County Narcotics Agency was also in the building at the truck weighing station at the time that the time of the controlled delivery. He corroborated the testimony of Special Agent 56 to the extent that he also observed two duffel bags being placed into the Explorer. However, as was the case with Special Agent 56, he did not actually observe an exchange take place because he could not see appellant when he walked beside the tractor-trailer. Also, Special Agent 63 did not identify appellant as the individual placing the duffel bags into the Explorer.
Special Agent 63 was also responsible for gathering evidence at the crime scene. In the cab of the tractor-trailer, he seized $3,800 in cash in $20, $50, and $100 bills. He also transported the two duffel bags in the back of the Explorer to the Lake County Crime Lab.
Upon testing the contents of the duffel bags, John Kucmanic of the Lake County Forensic Lab determined that each bag contained marijuana. The combined weight of marijuana in the two bags was 34,615.5 grams. The bags contained 10,495.1 and 24,120.4 grams of marijuana, respectively.
After his arrest, appellant was taken to the Willoughby Hills Police Department, where he gave a statement to Special Agent Clayton, in which appellant explained his involvement in the transaction. Special Agent Clayton then wrote appellant's statements, and asked him if that was what he intended to say. Appellant agreed to each proposition in the statement. Appellant initialed the statement, in which he explained that "I picked up the bags from the ground and put them in the Explorer." (Emphasis added.) This statement was admitted into evidence during the direct examination of Special Agent Clayton during appellee's case-in-chief.
Appellant testified in his own defense at trial. He emphasized that he placed only one duffel bag in the back of the Explorer. Appellee used the statement that appellant gave to the police stating that he had placed "bags" in the back of the Explorer to impeach his testimony that he had placed only one bag there.
The number of bags placed into the Explorer could be an important issue because if appellant placed only the smaller bag into the Explorer, then his offense of possession of marijuana would only be a third degree felony with a presumption of a prison sentence. R.C. 2925.11(C)(3)(e). On the other hand, if the jury found that appellant either possessed the larger bag or both bags, then appellant committed a second degree felony, with a mandatory prison term of eight years. R.C. 2925.11(C)(3)(f) and2929.14(A)(2).
On May 2, 1997, appellant was indicted on one count of possession of marijuana, R.C. 2925.11(C)(3)(f), a felony of the second degree. Appellant pleaded not guilty and the matter proceeded to a jury trial beginning on July 15, 1997, after which the jury found appellant guilty as charged in the indictment. On July 26, 1997, appellant obtained new counsel, who represented him for sentencing purposes and on appeal.
Appellant also filed a post-judgment motion to dismiss on the ground that R.C. 2925.11(C)(3)(f) is unconstitutional because it requires a mandatory prison term of eight years. Appellant filed a motion for a new trial on the basis that although he is of Jamaican descent, the jury was composed only of Caucasians. The trial court overruled each of these motions in a judgment entry filed on September 5, 1997. Pursuant to R.C. 2925.11(C)(3)(f) and2929.14(A)(2), on September 16, 1997, the trial court sentenced appellant to a mandatory prison term of eight years. Appellant timely appealed and now asserts the following assignments of error:
 "[1.] Appellant was denied effective assistance of counsel where counsel failed to file and argue a motion to suppress appellant's alleged confession obtained by law enforcement officers.
 "[2.] Ohio Revised Code Section 2925.11(C)(3)(f) unconstitutionally commanded the trial court to sentence the appellant to eight years of incarceration.
 "[3.] Appellant, a Jamaican national, was denied a fair trial where his jury and jury venire were only comprised of caucasian individuals."
In the first assignment of error, appellant asserts that he was denied the effective assistance of counsel by the failure of his trial attorney to file a motion to suppress his confession. In order to establish a claim of ineffective assistance of counsel, a convicted defendant must establish both that his counsel's performance was deficient, and that he was prejudiced by the deficient representation. Strickland v. Washington (1984),466 U.S. 668, 687. The right to effective assistance of counsel does not require defense counsel to file a motion to suppress in every case. State v. Flors (1987), 38 Ohio App.3d 133, 139. This court has recently held that when addressing ineffective assistance based on the failure to file a motion to suppress, it is appropriate to attempt to determine whether there is a basis in the record that the motion to suppress "could possibly have been granted." State v. Payton (1997), 119 Ohio App.3d 694, 705. See, also, State v. Byerly (Aug. 21, 1998), Portage App. No. 97-P-0034, unreported.
In the present case, appellant asserts that a motion to suppress his confession made at the Willoughby Hills Police Department could have been asserted on the following three bases: (1) the failure to demonstrate that appellant was informed of the warnings mandated by Miranda v. Arizona (1966), 384 U.S. 436; (2) appellee did not demonstrate a waiver of the Miranda protections; and (3) appellant's confession was taken after he had invoked his right to counsel.
The proper vehicle to exclude evidence that is purportedly procured in an unconstitutional manner is through the filing of a motion to suppress, which must be filed prior to trial. Crim.R. 12(B)(3). The failure to do so will result in waiver, except upon a showing of good cause. Crim.R. 12(G). At a suppression hearing, the state bears the burden of proving that statements were procured in compliance with Miranda. State v. Ward (June 2, 1995), Montgomery App. No. 14562, unreported, at 9, 1995 Ohio App. LEXIS 2245. On the other hand, the state's burden at trial is to prove the elements of the offense beyond a reasonable doubt. Inre Winship (1970), 397 U.S. 358, 364. Thus, the prosecution bears the burden of developing a different factual table in a suppression exercise than in a trial setting.
In the present case, the prosecution was not required to and, therefore, did not establish either the provision of Miranda
warnings or appellant's waiver during trial. Thus, the record before us does not demonstrate a predicate for a motion to suppress on these bases.
Also, appellant asserts that his counsel was ineffective because he failed to file a motion to suppress statements made after appellant had invoked his right to counsel. At trial, Special Agent Clayton testified:
 "I took a statement from the Defendant, we went over every sentence of the statement and at the end of the statement the Defendant, or Carlton Powell, stated that he wanted to consult a lawyer and agreed to initial the statement, but wanted to talk to a lawyer first and initialed the statement." (Emphasis added.)
Here, appellant confessed to possessing "bags" before he invoked his right to counsel. As a practical matter, any motion to suppress would have been an attempt to suppress statementsafter he had invoked his right to counsel. Moreover, appellant strenuously argues that he never signed the confession, but only initialed it. This distinction is irrelevant since it was not hearsay because it was an admission of a party-opponent. Evid.R. 801(D)(2)(a). Thus, this apparent invocation of the right to counsel does not present a proper basis for filing a motion to suppress. In summary, based upon the record before us, appellant's trial attorney was not ineffective in failing to file a motion to suppress.
Furthermore, assuming, arguendo, that appellant's trial counsel was deficient, appellant has not demonstrated any prejudice under the second prong of the Strickland test. The Supreme Court of Ohio has held:
 "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
Thus, the inquiry is whether there is a reasonable probability that had appellant's confession been suppressed, he would have been found not guilty. In the present case, appellant's confession was admitted into evidence during the prosecution's case-in-chief during the testimony of Special Agent Clayton. Also, appellee used the confession to impeach appellant regarding his claim that he placed only one duffel bag in the back of the Explorer.
Miranda prohibits the prosecution from using statements procured from custodial interrogation from being admitted in the state's case-in-chief unless the procedural safeguards set forth in that opinion are followed. Miranda, 384 U.S. at 444-445. Therefore, assuming that appellant's confession was suppressed, we must determine whether there is a reasonable probability that appellant would have been found not guilty. In our view, even if the confession were excluded, appellee had a compelling case proving appellant's guilt. Special Agent 56 testified that she observed appellant place two duffel bags in the rear of the Explorer. Special Agent 63, although unable to identify appellant, testified that he saw "two items" being placed in the rear of the Explorer. Appellant testified at trial that he placed only one bag in the rear of the Explorer. Thus, even if his confession was excluded during appellee's case-in-chief, the trial would have amounted to a test of credibility between two police officers and an individual who admitted to receiving at least one duffel bag of marijuana.
Additionally, the record does not include any evidence that appellant only placed the smaller of the two bags in the Explorer. Therefore, even if a factfinder, here the jury, believed that appellant possessed but one bag, it still could have found appellant guilty of possessing over 20,000 grams of marijuana under R.C. 2925.11(C)(f)(3) because the larger bag contained 24,120.4 grams of marijuana. Thus, the result might well have been the same even if the jury believed appellant's testimony. In summary, appellant has not demonstrated a reasonable probability of a different result had his attorney filed a motion to suppress.
Also, although a confession procured in violation of Miranda is inadmissible in the prosecution's case-in-chief, it is admissible to impeach the credibility of a defendant's testimony. Harris v.New York (1971), 401 U.S. 222, 226; Oregon v. Hass (1975),420 U.S. 714, 722. Thus, in the instant matter, even if appellant's confession had been suppressed, appellee could have used that statement to impeach his credibility with respect to his claim that he had only inserted one duffel bag into the Explorer.
In conclusion, appellant has not demonstrated ineffective assistance of counsel on the basis that his trial counsel failed to file a motion to suppress appellant's confession. Furthermore, appellant has not demonstrated a reasonable probability that the result of the trial would have been different had his confession been suppressed. Appellant's first assignment of error is not well-taken.
In the second assignment of error, appellant contends R.C.2925.11(C)(3)(f) is unconstitutional on three bases. First, appellant claims that the requirement of a fixed mandatory prison sentence represents a usurpation by the legislature of the judiciary's power to determine the sentence of individual offenders. It is axiomatic that "the General Assembly has the plenary power to prescribe crimes and fix penalties." State v.Morris (1978), 55 Ohio St.2d 101, 112. See, also, Municipal Ct.v. State ex rel. Platter (1933), 126 Ohio St. 103. This court has recently stated that "unless otherwise constrained, it is within the province of the legislature not only to fix the duration of a sentence but also to define the nature of the confinement whether in terms of jail, prison, or otherwise."State v. Strailey (Sept. 25, 1998), Lake App. No. 97-L-227, unreported, at 5. Therefore, the General Assembly does not violate the separation of powers doctrine by establishing mandatory sentences for the commission of certain crimes.Cleveland v. Scott (1983), 8 Ohio App.3d 358, 359.
Next, appellant asserts that R.C. 2925.11(C)(3)(f) is unconstitutional because it provides for a mandatory prison term of eight years for possession of more than 20,000 grams of marijuana, while pursuant to R.C. 2925.11(C)(3)(e), when the amount of marijuana is between 5,000 and 20,000 grams, there is a rebuttable presumption of prison time, and the trial court has discretion in assessing the sentence. In State v. Wilson (1979),58 Ohio St.2d 52, 55-56, the Supreme Court of Ohio held that "if the statutes prohibit identical activity, require identical proof, and yet impose different penalties, then sentencing a person under the statute with the higher penalty violates the Equal Protection Clause."
In the instant matter, R.C. 2925.11(C)(3) provides for a hierarchy of penalties for possession of marijuana based on the amount of marijuana possessed. Each offense listed in that statutory subsection has different elements with respect to the amount of marijuana possessed. Thus, appellant has not demonstrated an equal protection violation.
Moreover, appellant has not asserted that either a fundamental right or suspect classification is involved. Thus, the statute does not violate the Equal Protection Clause so long as it bears some rational relationship to a legitimate governmental objective.State ex rel. Vana v. Maple Hts. City Council (1990), 54 Ohio St.3d 91,92, citing Clements v. Fashing (1982), 457 U.S. 957,963. In our view, the statute appropriately distinguishes among offenders possessing different amounts of marijuana. The possession of drugs, especially in an amount as large as 20,000 grams presents a serious potential harm to society; thus, the General Assembly acted permissibly in punishing this offense in this manner. Accordingly, the legitimate government objective of preventing the abuse of drugs is rationally related to the sentencing scheme of R.C. 2925.11(C)(3). Appellant's equal protection argument is without merit.
Finally, appellant asserts that R.C. 2925.11(C)(3)(f) violates the constitutional prohibition against cruel and unusual punishment. In assessing a challenge to the length of a sentence or the proportionality of the sentence to the offense, the Supreme Court of the United States has formulated a tripartite test:
 "[A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm (1983), 463 U.S. 277, 292.
In Solem, the Court recognized that except for capital punishment, successful claims under this provision will be rare, and that courts should give substantial deference to the legislature in establishing the types and limits of criminal punishments. Id. at 289-290. In Harmelin v. Michigan (1991),501 U.S. 957, 994-995, the Court stated:
 "Severe mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history. * * * There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is `mandatory.'"[1]
The Supreme Court of Ohio has held:
 "A punishment does not violate the constitutional prohibition against cruel and unusual punishments, if it be not so greatly disproportionate to the offense as to shock the sense of justice of the community." State v. Chaffin (1972), 30 Ohio St.2d 13, paragraph three of the syllabus.
In the present case, R.C. 2924.11(C)(3)(f) provides for the maximum penalty for a second degree felony, which is eight years pursuant to R.C. 2929.14(A)(2). R.C. 2925.11(C)(3) sets forth a reasonable progression of harsher sentences for possession of a larger quantity of marijuana. Moreover, although it constitutes the maximum sentence for a second degree felony, this sentence is not disproportionate to other crimes of similar stature.
Furthermore, this sentence is not disproportionate to sentences for similar crimes in other jurisdictions. For example, in Illinois, the sentence for possession of more than 5,000 grams of marijuana is a determinate sentence with a minimum of four to a maximum of fifteen years of imprisonment. Ill.Stat.Ann., Chapter 720, Section 550/4(g); and Chapter 730, Section 5/5-8-1(a)(4). Thus, in Illinois, appellant's sentence could have been nearly double his sentence in Ohio for possession of substantially less marijuana than appellant possessed in the case sub judice.[2]
Additionally, as stated in Harmelin, the mere mandatory nature of appellant's sentence does not infringe on the rights guaranteed by the Eighth Amendment. Therefore, appellant's claim that R.C.2925.11(C)(3)(f) violates the constitutional prohibition against cruel and unusual punishment is not well-founded. In summary, R.C. 2925.11(C)(3)(f) does not violate the doctrine of separation of powers, the constitutional prohibition against cruel and unusual punishment, or equal protection. Appellant's second assignment of error is without merit.
In the third assignment of error, appellant argues that he was denied a fair trial because the jury venire and final jury panel was composed only of white persons. Specifically, appellant asserts that his jury venire did not represent a fair cross-section of the community. Initially, we note that the record does not indicate that appellant timely objected to the venire prior to the examination of jurors as required by Crim.R. 24(E). Thus, appellant has not properly preserved this error for purposes of appellate review. See State v. Lundgren (Sept. 14, 1993), Lake App. Nos. 90-L-15-140 and 91-L-036, unreported, at 75.
Moreover, in addressing the merits of appellant's assertion, we conclude that this argument is not well-founded. The Supreme Court of Ohio has recently addressed this exact issue by stating:
 "The Sixth Amendment guarantee to a jury trial `contemplates a jury drawn from a fair cross section of the community.' Taylor v. Louisiana (1975), 419 U.S. 522, 527 * * *. To establish a violation of this requirement, the `defendant must prove: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process.' State v. Fulton (1991), 57 Ohio St.3d 120, * * * paragraph two of the syllabus, citing Duren v. Missouri (1979), 439 U.S. 357, 364 * * *." (Parallel citations omitted.) State v. McNeill (1998), 83 Ohio St.3d 438, 443-444.
Just as in McNeill, appellant in the instant case has not demonstrated that African-Americans were under represented on the venire in relation to their percentage in the community.[3]
Furthermore, appellant has not produced any evidence of systematic exclusion of African-Americans from the jury selection process utilized in Lake County. Therefore, appellant has failed to demonstrate either that his particular venire or that generally venires in Lake County violate the requirement that venires represent a cross section of the community. Appellant's third assignment of error is not well-taken.
For the foregoing reasons, appellant's assignments of error are without merit. The judgment of the trial court is affirmed. ________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J.,
NADER, J., concur.
[1] We recognize that in Harmelin, the Court criticized the Solem tripartite test, but could not entirely agree upon an appropriate standard to replace it. See, generally, Yeargin, Twenty-Seventh Annual Review of Criminal Procedure (1997), 86 Geo.L.J. 1884, 1891-1894. Thus, we apply the Solem test, which, if anything, places a lighter burden on the party asserting the unconstitutionality of a statute on this basis.
[2] Because other jurisdictions define this crime in a different manner, and provide a different penalty structure, literal comparison with the Ohio sentence is difficult. However, Illinois provides a valid analogy of the crime and sentence.
[3] In fact, we note that the record does not demonstrate that the jury was all white.