DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Dennis W. Edwards, Michael G. Domokur, John J. Robinson, and Peterson/Raeder, Inc., appeal from the judgment of the Summit County Court of Common Pleas. We affirm.
 I.
Peterson/Raeder provided architectural services to its clients. Appellants and Mr. Richard Peterson, appellee, are the sole shareholders in Peterson/Raeder, Inc. They also comprise its officers and directors. On January 30, 1995, appellants and Mr. Peterson entered into a contract as the only directors, officers, and shareholders of Peterson/Raeder which governed, among other things, their employment in the corporation and the planned retirement of Mr. Peterson ("the shareholders' agreement").
ATT offered Peterson/Raeder an architectural services contract later in 1995. Mr. Peterson concluded that the contract was too much of a risk because it contained a clause that his attorney advised him was uninsurable. As Mr. Peterson was nearing the end of his career, he did not wish Peterson/Raeder to enter into such a contract because of the potential risk to his personal assets. Therefore, Mr. Peterson voted against the contract while the other three shareholders, appellants, voted for the contract. Hence, Peterson/Raeder accepted the contract. As the meeting went on Mr. Peterson continued to voice his dissatisfaction with the risk level being forced upon him. A vote as to corporate officers was then called for and Mr. Peterson was elected Vice President, having formerly been President. Mr. Peterson then left his employment at Peterson/Raeder.
On April 5, 1996, Mr. Peterson instituted the instant action in the Summit County Court of Common Pleas. In his complaint, Mr. Peterson asserted that appellants had constructively fired him, thereby breaching the shareholders' agreement. Moreover, Mr. Peterson, a minority shareholder, claimed that appellants had breached the fiduciary duty that they owed him as majority shareholders.[1] After a voir dire of the prospective jurors, a jury trial was held, commencing on July 9, 1998 and concluding on July 17, 1998. In a verdict journalized on July 21, 1998, the jury returned a verdict in favor of Mr. Peterson in the amount of $696,189. Upon Mr. Peterson's proposed inclusion of prejudgment interest, appellants filed a motion in opposition to the inclusion of prejudgment interest on July 30, 1998. On the same day, the trial court entered judgment in favor of Mr. Peterson including prejudgment interest in the amount of $27,002.26, bringing the total judgment to $723,191.26. This appeal followed.
Appellants assert six assignments of error. We will address each in due course, consolidating those concerning Mr. Peterson's breach of fiduciary duty claim.
 II. BREACH OF CONTRACT
A. First Assignment of Error
THE TRIAL COURT INCORRECTLY DENIED DEFENDANTS' MOTIONS FOR DIRECTED VERDICT.
 A. MR. PETERSON'S BREACH OF CONTRACT CLAIM.
Appellants assert that the trial court erred in overruling their motion for directed verdict on the breach of contract claim. Specifically, they assert that Mr. Peterson voluntarily resigned his employment and that, as the parties stipulated that the contract was clear and unambiguous, the contract provisions which provide for compensation in the event that Mr. Peterson did not retire, resign due to disability, or die would apply. Hence, they assert that no breach of contract occurred. We disagree.
Under Civ.R. 50(A), a defendant may move for a directed verdict at the close of a plaintiff's case in chief.
 In ruling on a directed verdict — or, in our case, considering such a ruling on appeal — a court must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds can come to but one conclusion on the evidence submitted, that conclusion being adverse to the non-moving party. If reasonable minds can reach different conclusions, the matter must be submitted to a jury. The court considers the motion without weighing the evidence or determining the credibility of witnesses. A motion for a directed verdict raises a question of law because it examines the materiality of the evidence rather than the conclusions to be drawn from the evidence. Thus, the court does not determine whether one version of the facts presented is more persuasive than another; rather, it determines whether only one result can be reached under the theories of law presented in the complaint.
(Citations omitted.) Cox v. Oliver Mach. Co. (1987), 41 Ohio App.3d 28,29. We review the trial court's decision de novo.Nichols v. Hanzel (1996), 110 Ohio App.3d 591, 599.
The trial court did not err by denying appellants' motion for directed verdict on Mr. Peterson's breach of contract claim. Construing the evidence most strongly in Mr. Peterson's favor, the evidence showed that appellants intentionally accepted a professional contract for services which they knew Mr. Peterson was opposed to due to the risk level in order to force him to leave his employment at Peterson/Raeder. As the shareholders' agreement envisaged Mr. Peterson's continued employment until his eventual retirement on December 31, 1998, the jury could have found that his exit from his position was forced by appellants and therefore constituted a breach of the agreement. Moreover, under the shareholders' agreement, Mr. Peterson was to be President of the corporation but was removed from that position and made Vice President, which the jury also could have concluded was a breach of the contract. Hence, we conclude that the trial court did not err in denying appellants' motion for a directed verdict. Part A of appellants' first assignment of error is overruled.
B. Third Assignment of Error
THE TRIAL COURT INCORRECTLY REFUSED TO ALLOW TESTIMONY RELATED TO MR. PETERSON'S PERSONAL AFFAIRS.
Appellants assert that the trial court erred by denying them the ability to present evidence concerning Mr. Peterson's personal affairs. Moreover, they aver that the trial court erred by finding that Mr. Peterson's testimony did not open the door to rebuttal evidence concerning Mr. Peterson's personal affairs. We disagree.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Evid.R. 403(A) states that otherwise relevant evidence is "not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Moreover, relevant "evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B).
When evidence is offered by an adverse party regarding a topic on which evidence would normally be excluded due to the unfair prejudice to that adverse party, one may offer "[r]ebutting evidence [that is] given to explain, refute, or disprove new facts introduced into evidence by the adverse party [but the rebuttal evidence] becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence."State v. McNeill (1998), 83 Ohio St.3d 438, 446. Moreover, "[i]t is within the trial court's discretion to determine what evidence is admissible as proper rebuttal." Id.
The trial court did not abuse its discretion by excluding evidence of Mr. Peterson's personal affairs based upon its prejudicial value. Appellants proffered evidence concerning Mr. Peterson's health, pending divorce, and relationship with his bookkeeper and present wife. They alleged that such evidence was relevant to show that Mr. Peterson was not working diligently and that these personal problems were effecting his performance at Peterson/Raeder. We conclude, however, that the trial court did not abuse its discretion by excluding evidence of such matters due to their highly prejudicial value. Moreover, the relevance of this evidence is tenuous because Mr. Peterson does not assert, nor do appellants contend that he was fired due to his misconduct. Hence, we conclude that the trial court's decision, based upon the relevance of the evidence being tenuous but the unfair prejudice to Mr. Peterson being substantial, does not demonstrate perversity of will or the like.
Appellants also assert that the trial court erred by failing to allow proper rebuttal after Mr. Peterson testified concerning some of his personal difficulties. Mr. Peterson testified that he was at the "bottom of his wheel" and introduced evidence concerning the effect of his personal problems upon his performance at work. However, we conclude that the trial court did not abuse its discretion by not allowing appellants to rebut such testimony with evidence of Mr. Peterson's poor performance at work as the testimony which was to be rebutted evidenced Mr. Peterson's poor performance at work. Hence, the trial court did not abuse its discretion by refusing to allow further evidence of Mr. Peterson's poor performance at work because it did not rebut the evidence offered by Mr. Peterson but, rather, further sustained it. Hence, we conclude that the trial court did not abuse its discretion by not allowing appellants to introduce evidence concerning Mr. Peterson's personal affairs. Appellants' third assignment of error is overruled.
C. Fourth Assignment of Error
THE JURY VERDICT OF $696,189 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
A. CALCULATIONS BASED ON ARTICLES V AND VI OF THE SHAREHOLDERS' AGREEMENT.
B. MR. PETERSON'S CLAIM THAT HIS "REMOVAL" AS PRESIDENT AND CONSTRUCTIVE DISCHARGE WAS A BREACH OF CONTRACT AND BREACH [sic] OF FIDUCIARY DUTY.
Appellants contend that the jury went against the manifest weight of the evidence when it did not calculate damages under Article VII of the shareholders' agreement. Further, appellants assert that the jury acted against the manifest weight of the evidence by concluding that Mr. Peterson was constructively discharged and that such a discharge was a breach of the shareholders' agreement. We disagree.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3.
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19.
 Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
"Traditionally, [one's] recovery has been limited to the amount due under the contract, plus interest." Hoskins v. AetnaLife Ins. Co. (1983), 6 Ohio St.3d 272, 276. Moreover, "[w]here an employee has been wrongfully discharged as a result of a breach of an employment contract, front pay, or lost future wages, may be awarded as compensation between the date of discharge and reemployment in a position of equal or similar status." Worrellv. Multipress, Inc. (1989), 45 Ohio St.3d 241, paragraph two of the syllabus. If one's "employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign," one has been constructively fired which may constitute a breach of one's employment contract. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, paragraph four of the syllabus.
The jury's verdict was not against the manifest weight of the evidence. Appellants assert that the jury acted against the manifest weight of the evidence by failing to base Mr. Peterson's damages on Article VII of the shareholders' agreement and by finding that Mr. Peterson was constructively discharged, thereby breaching the shareholders' agreement. Article VII, by its terms, is applicable if Mr. Peterson's employment was terminated for reasons other than retirement, disability or death. The jury based its calculations on other portions of the contract, which provided for Mr. Peterson's remuneration until retirement. The appellants accepted the ATT contract knowing of their own limited liability potential, due to limited assets, and knowing of Mr. Peterson's plans to retire. The contract threatened his lifestyle in retirement and placed the funds he had accrued in preparation of retirement at risk. Hence, construing the evidence in Mr. Peterson's favor, the jury could conclude that such a risk made working conditions intolerable for a reasonable person in Mr. Peterson's position. Moreover, we conclude that the jury did not act against the manifest weight of the evidence by concluding that he was constructively discharged, thereby breaching the shareholders' agreement and allowing damages in the amount payable to him without such a breach. Therefore, after thoroughly reviewing the record, we conclude that the jury did not act against the manifest weight of the evidence by concluding that Mr. Peterson was entitled to the amount he would have earned had the contract been fully performed and in concluding that the shareholders' agreement was breached by the constructive firing of Mr. Peterson. Appellants' fourth assignment of error, as it related to the breach of contract claim, is overruled.
D. Fifth Assignment of Error
THE TRIAL COURT INCORRECTLY DENIED DEFENDANTS' THEIR RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW.
A. THE TRIAL COURT SHOULD NOT HAVE ALLOWED MR. PETERSON'S ACCOUNTANT TO TESTIFY REGARDING REVISED DAMAGE CALCULATIONS OF WHICH HE FIRST INFORMED DEFENDANTS' COUNSEL FIVE BUSINESS DAYS BEFORE TRIAL.
B. THE TRIAL COURT SHOULD HAVE ALLOWED DEFENDANTS TO TAKE THE DEPOSITION OF GARY STARR AND SHOULD NOT HAVE ALLOWED HIM TO TESTIFY CONCERNING HIS ENGINEERING FIRM'S
CONTRACT WITH ATT.
Appellants assert that the trial court erred by allowing Mr. Gedelian, Mr. Peterson's accountant to testify at trial regarding the damage calculations that he revised upwards only five business days before trial. Furthermore, appellants argue that they were prejudiced by the lack of notice of the revised damage calculations. Appellants also aver that the trial court erred by allowing Gary Starr to testify regarding his engineering firm's contract with ATT and erred by not allowing appellants to depose Mr. Starr after the trial court's discovery deadline had passed. We disagree.
"[A]bsent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." State exrel. The V Cos. v. Marshall (1998), 81 Ohio St.3d 467, 469. Moreover, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." Sage, 31 Ohio St. 3d at paragraph two of the syllabus. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency," Pons, 66 Ohio St.3d at 621, or an arbitrary, unreasonable, or unconscionable attitude, Schafer v. Schafer
(1996), 115 Ohio App.3d 639, 642.
Appellants assert that Mr. Peterson surprised them just a few days prior to trial by asserting a higher damages claim based upon a different method of calculation than had been asserted during discovery. However, the trial court resolved this alleged violation of discovery rules by allowing appellants' attorney to voir dire Mr. Gedelian, whom Mr. Peterson called as an expert to testify regarding computation of damages, during the trial and also in the presence of appellants' expert on damages. Hence, we cannot conclude that the trial court's conduct displayed passion, prejudice, or the like. Moreover, we find it difficult to discern how appellants were prejudiced as they had the opportunity to examine Mr. Gedelian regarding his revised calculations and had their expert refute them when he was called as a witness during trial. Hence, we cannot say that the trial court abused its discretion by allowing Mr. Gedelian to testify regarding Mr. Peterson's revised damage calculations.
The trial court also did not abuse its discretion by enforcing its discovery deadline and thereby not permitting appellants to depose Gary Starr. The trial court, in anticipation of an early trial that was postponed, set a discovery deadline of December 30, 1996. Mr. Peterson gave notice of his intent to depose Mr. Starr on December 10, 1996. On February 19, 1997, appellants filed a notice of examination with the trial court that they would examine Mr. Starr on February 25, 1997. Appellants, however, did not depose Mr. Starr at that time but rather sought to depose Mr. Starr in October of 1997. Mr. Peterson filed for a protective order to prevent appellants from deposing Mr. Starr as the discovery deadline had long since passed. On October 3, 1997, the trial court granted Mr. Peterson a protective order preventing the deposition of Mr. Starr by appellants. Over appellants' objections, Mr. Starr testified at trial that his engineering firm had been offered a contract with ATT containing a similar high risk indemnity clause and that, through negotiation, ATT agreed to modify it. Hence, we conclude that the trial court did not abuse its discretion by preventing appellants from deposing Mr. Starr as the trial court was simply enforcing its discovery plan and a deadline of which appellants were aware. Furthermore, we conclude that, due to the similarity in the contract provisions, the trial court did not abuse its discretion by allowing Mr. Starr to testify regarding his firm's dealings with ATT. Appellants' fifth assignment of error is overruled.
E. Sixth Assignment of Error
THE TRIAL COURT INCORRECTLY ALLOWED PREJUDGMENT INTEREST OF $27,000.26.
Appellants aver that the trial court erred by granting prejudgment interest to Mr. Peterson from the time when the money was due under the contract. As appellants offered partial payment to Mr. Peterson, they assert that he is not entitled to prejudgment interest on that portion of the verdict. Furthermore, appellants argue that the interest should not have been calculated based upon discretionary bonuses. We disagree.
"Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo."Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107,108.
In Royal Electric Construction Corporation v. Ohio StateUniversity (1995), 73 Ohio St.3d 110, at the syllabus, the Supreme Court construed and applied R.C. 1343.03(A), holding that
 [t]he award of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court.
The trial court did not err in granting prejudgment interest in this case. The jury returned a verdict based upon the amount Mr. Peterson would have earned had the shareholders' agreement been fully performed. Hence, we conclude that the trial court did not err in awarding Mr. Peterson prejudgment interest on the amount that was due and owing on the contract but not paid due to appellants' breach. Appellants' sixth assignment of error is overruled.
 III. BREACH OF FIDUCIARY DUTY
First Assignment of Error
THE TRIAL COURT INCORRECTLY DENIED DEFENDANTS' MOTIONS FOR DIRECTED VERDICT.
 B. MR. PETERSON'S BREACH OF FIDUCIARY DUTY CLAIM.
Second Assignment of Error
THE TRIAL COURT INCORRECTLY REFUSED TO INSTRUCT THE JURY ON THE BUSINESS JUDGMENT RULE.
Fourth Assignment of Error
THE JURY VERDICT OF $696,189 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
B. MR. PETERSON'S CLAIM THAT HIS "REMOVAL" AS PRESIDENT AND CONSTRUCTIVE DISCHARGE WAS A BREACH OF CONTRACT AND BREACH [sic] OF FIDUCIARY DUTY.
Appellants argue that the trial court incorrectly denied their motion for a directed verdict on Mr. Peterson's breach of fiduciary duty claim. Furthermore, they argue that the trial court erred by not instructing the jury on the business judgment rule in regard to the fiduciary duty claim. Finally, they assert that the jury found a breach of fiduciary duty by Mr. Peterson's constructive discharge and that such a conclusion was against the manifest weight of the evidence. We, however, do not reach the merits of these assigned errors as the jury based its verdict on the breach of contract claim, making any errors concerning the breach of fiduciary duty claim moot and harmless.
 In determining whether a case is moot, "`[t]he duty of this court, as of every judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. * * *'" Miner v. Witt (1910), 82 Ohio St. 237, 238-239, 92 N.E. 21, 22, quoting Mills v. Green (1895), 159 U.S. 651, 653[, 40 L.Ed. 293, 293-94].
State ex rel. Eliza Jennings, Inc. v. Noble (1990), 49 Ohio St.3d 71,74.
Appellants asserted both breach of contract and breach of fiduciary duty claims against Mr. Peterson. However, in its responses to the interrogatories the jury found that Mr. Peterson had not retired and that Article VII of the shareholders' agreement did not control. Moreover, Mr. Peterson's expert testified to the amount Mr. Peterson was owed under the contract and the jury found for Mr. Peterson in that amount. Hence, we conclude that the jury's response to the interrogatories clearly shows that the jury was looking to the contract, which had become the basis of ongoing business operations. Although the nature of that relationship was a fiduciary one, as was instructed by the trial court, we conclude that any error as to the breach of fiduciary duty claim is harmless and moot because the jury based its decision based on other principles. See Kokitka v. Ford MotorCo. (1995), 73 Ohio St.3d 89, 94 (holding that where the jury did not base its decision upon the allegedly erroneous jury instruction any error in the given instruction was harmless). Appellants' first assignment of error as it pertains to the breach of fiduciary duty claim, second assignment of error, and third assignment of error as it pertains the breach of fiduciary duty claim are overruled.
 IV.
Appellants' six assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
WILLIAM G. BATCHELDER FOR THE COURT
SLABY, P.J., CONCURS
CARR, J, CONCURS IN JUDGMENT ONLY
[1] Mr. Peterson also asserted an age discrimination claim but it is not before this court as the jury, in specific response to an interrogatory, concluded that he was not discriminated against because of his age.