OPINION
Defendant-appellant, Elmer Goins, appeals his conviction in the Butler County Court of Common Pleas for gross sexual imposition. The trial court's judgment is affirmed.
Appellant was indicted on two counts of gross sexual imposition under R.C. 2907.05(A)(4). Appellant entered a plea of not guilty to the charges against him and the case proceeded to a jury trial.
At trial the following evidence was presented:
The victim, who was six years old at the time that the events to which she testified occurred, testified that she was playing at the home of Hayley, her neighbor, on July 27, 1999. The two girls were planning on swimming in Hayley's new pool. The victim testified that when she went into Hayley's house, she sat down on the lap of Hayley's dad. The victim was wearing a bathing suit at the time. The victim testified that while she was sitting on the man's lap, he touched her "in the bird." When asked if the man had done anything with his hand, The victim said that he "was just rubbing." When asked in court how she felt when she was touched, the victim said that it made her nervous. The victim testified that she left Hayley's house because she had been touched.
The victim testified that she went to see her mother after the incident. The victim testified that when she was riding in the car with her mother on the way to Wendy's, she told her mother what happened. The victim also testified that she talked to the police that night and told them what had happened.
At the end of her direct examination, the victim was asked if she could identify who had touched her. After the victim failed to identify appellant in the courtroom, the prosecutor asked the victim whether Hayley's dad had touched her, and the victim said yes. On cross-examination, the victim testified that she returned to Hayley's house to play the next day but that Hayley's mother would not allow her to stay.
The victim's mother also testified. The mother testified that the victim had been riding her bicycle earlier that day with her grandmother. The mother testified that when the victim returned to the house, the mother asked her if she wanted some ice cream, since it was a very hot day. The victim said she did and went back outside. The mother testified that she thought it took her about twenty or thirty minutes to find her keys and her purse. She then went outside and looked for the victim. She saw the victim's bicycle in front of her neighbor's house, where the victim's friend Hayley lived. The mother called for the victim several times. Hayley's mother, who was sitting on the front porch, got up and told The victim that her mother wanted her. The victim then ran out of the house through the front door.
The mother testified that once the victim got into the mother's car, the mother noticed that she was upset. The victim immediately told the mother that something had happened to her. The mother pulled the car over in the driveway of a Wendy's restaurant and talked with the victim about what had happened. Afterward, the mother and the victim went to the house of a friend of the family and called 911. The mother testified that two officers came but that the victim "closed down" in that she would not talk and started to cry. The police and some detectives went over to Hayley's residence to investigate.
The mother further testified that after the incident appellant would go by the mother's house, walking by extremely slowly and trying to give the victim and her sister a Popsicle or sucker and attempted to communicate with them in other ways. The mother testified that when this happened, the victim would run back into the house. The mother testified that the victim never went back to Hayley's house and that the mother did not allow the victim and Hayley to play together after this incident. The mother's other daughter Courtney would occasionally sneak out and see Hayley, however.
The victim's grandmother, testified that she lives next door to the victim and her mother. The grandmother testified that after the victim and she rode their bicycles that day, Hayley came over and asked the victim if she wanted to swim in her new swimming pool. The grandmother allowed the victim to go. She later heard what happened there from the mother. The grandmother testified that after the incident, the victim was feeling "terrible" and would not talk, which was not normal behavior for her granddaughter. The grandmother testified that the victim would not leave the house for two weeks and did not want her uncle or her grandfather to touch her, which again was uncharacteristic of the victim. The grandmother testified that after that incident she saw appellant "parade up and down the side of the house and look over and grin at us." Finally, The grandmother testified that the victim identified appellant as the person who had touched her.
Detectives David Weissinger and Mark Poppe as well as police officers Steven Hanks and Thomas Hurst testified that they responded to the scene after the 911 call was made. Hanks and Hurst testified that the victim was upset and withdrawn that night. After talking to the victim, the law enforcement officers went to the residence where appellant, Hayley's dad, was staying. They noticed that appellant's breath smelled liked alcohol and appellant admitted that he had been drinking. Hurst testified that appellant "didn't seem too shocked that we were there to speak with him." After the law enforcement officers explained why they were there, appellant denied that anything improper had happened. Because appellant had been drinking, the officers did not take an official statement from him that night.
Dr. Sherry Baker, a licensed psychologist, testified that she interviewed the victim about experiences with good, bad, and secret touches. Dr. Baker testified that during this interview, the victim said that she had gone to Hayley's house to go swimming and that she was wearing a bathing suit. The victim told Dr. Baker that she saw Hayley sitting in the room where they "sit or they eat" and "Hayley's dad" was there.
Dr. Baker testified that the victim told her that Hayley's dad put [The victim] on his lap and * * * touched her between the legs and she got off his lap and then he pulled her back by her hand and put her on his lap again. And she * * * squeezed her legs together so he couldn't touch her between her legs and he pried her legs apart and touched rubbed her between her legs, uh, with his hand.
Dr. Baker testified that the victim stated that she had been touched "outside her clothes between her legs." When asked whether anything had been said to her, the victim said that she thought something was said but could not remember what it was. Dr. Baker testified that the victim said that after she was touched, she ran home to tell her mother what had happened. The victim told Dr. Baker about her fear of leaving her house or going near Hayley's house and seeing Hayley's dad again.
Dr. Baker further testified that the victim had drawn a picture illustrating where she had been touched. The victim demonstrated what happened using anatomical dolls. When using the dolls, the victim again identified the person who touched her as "Hayley's dad." Dr. Baker's diagnosis of the victim was that she had suffered from sexual abuse and was continuing to suffer anxiety as a result of the experience.
After further investigation of the allegations, appellant was indicted. Poppe interviewed appellant after his indictment. Appellant waived his Miranda rights before making a formal statement, in which he again denied any wrongdoing. In this statement, appellant stated:
 Hayley came up and she got up onto my right knee, then [the victim] asked if she could sit on my other knee also, and I said, "you sure can." So, I wrapped my left arm around behind her and I picked her up with my forearm and placed her onto my left knee. We sat there for about two minutes when the girls said that they wanted Popsicle's [sic]. So, the girls got off of my knees and Hayley and I went to the kitchen to get the Popsicle's [sic]. The victim entered, stood in the front doorway, or was standing right inside the living room when Hayley gave her a Popsicle. I heard Debbie tell [the victim] that her mom wanted her and she left with her mother. This was the last time * * * I saw [the victim].
Appellant also testified at trial. He testified that he had been staying at the home of Deborah Delong, his ex-wife, during the time of the incident, and that day he had arisen early to paint her house. Appellant testified that while working on this project, which continued until the early evening hours, he drank between six and nine beers. Appellant testified that he had seen the victim and his daughter Hayley several times during the day, as they were playing together and riding bicycles.
Appellant testified that after he finished painting, he sat on the front porch and drank a beer. Appellant further testified that Hayley sat on his lap for a while and then the victim asked if she could sit on his lap. Appellant testified that Delong was sitting about three feet away from appellant when the girls were sitting on his lap. Appellant testified that the girls asked him for Popsicles and that he went into the house to get some. According to appellant's testimony, Hayley walked to the kitchen with him, but the victim did not. Appellant took Popsicles from the freezer, walked back to the porch, handed the girls their Popsicles, and then the girls sat on his lap again. Appellant testified that Delong was again there when this happened. Then Hayley and the victim got down and went inside the house. Soon thereafter appellant heard Delong tell the victim that her mother was calling her. Appellant testified that while the victim was sitting on his lap he did not touch her in an inappropriate way.
Delong also testified on behalf of the defense. Delong testified that she had been divorced from appellant for three years. She explained that appellant had visited her to see Hayley and had stayed for about a month. Delong testified that on the day in question the victim asked to sit on appellant's lap and that the girls "sat there and ate their popsicle's [sic] and were up." Delong testified that she was present during the entire time that the victim sat on appellant's lap and that she was facing them and talking to appellant. Delong testified that she did not observe appellant touch the victim in an inappropriate way that day and that she was shocked when the police arrived that night.
On cross-examination, Delong testified that appellant drank "maybe about eight beers" that day. Delong also admitted that during her grand jury testimony, she stated that she was "leery" of appellant because he had been drinking alcohol that day.
At the conclusion of the jury trial, the jury returned a verdict of not guilty on count one and a verdict of guilty on count two. Appellant was sentenced to a prison term of two years. Appellant appeals, raising five assignments of error. To facilitate our review of the issues raised, we will consider the assignments of error in a different order than they were presented in appellant's brief.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FINDING THAT THE ALLEGED VICTIM, AGE 7, WAS COMPETENT TO TESTIFY AT TRIAL.
Evid.R. 601 states in pertinent part, "Every person is competent to be a witness except: (A) * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." It is the duty of the trial judge to conduct a voir dire examination of a child less than ten years of age to determine the child's competency to testify. See State v. Frazier (1991), 61 Ohio St.3d 247, 250-251. The Supreme Court of Ohio has stated:
 In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.
 Id. at 251. Absent a demonstration of an abuse of discretion, a trial court's finding that a child is competent to testify shall not be disturbed. Id. at 251.[1]
In this case, the victim was seven years old at the time of appellant's trial. At the victim's competency hearing, the trial judge asked general questions related to her ability to accurately perceive and recall past events. Appellant insists that because the victim failed to answer some of the trial judge's questions correctly that the victim should not have been found to be competent to testify.
The victim did not give a correct answer to every question asked of her. She did not know her grandmother's last name. The victim did not know what day of the week or what month it was. The victim thought that summer came before spring. The victim stated that her birthday, which was November 15, was in the summertime. Also, the victim could not remember what she had received for Easter that year.
Although the victim had difficulty answering some questions, she answered other questions correctly. The victim could spell her last name, knew her age, the name of her school, her teacher's name, her grade, and her best subject in school. The victim knew the date of her birthday and knew that it was close to Thanksgiving. The victim could recite the days of the week in order. The trial judge also asked the victim several questions about the difference between telling the truth and telling a lie and her responsibility to be truthful. The victim explained the ramifications of telling a lie and the punishment for lying.
After the trial judge finished questioning the victim, the prosecutor asked the victim some additional questions. Defense counsel did not question the victim when given the opportunity to do so by the trial court.
At the conclusion of the competency hearing, the trial judge noted that the victim was "a remarkably bright young lady" who was "clear and composed." The trial judge found her to be "capable of receiving just impressions of fact and transactions and relating them truly." The trial judge also stated the victim knew the difference between a truth and a lie and the consequences of telling a lie.
Upon review of the record, we find that the trial court did not abuse its discretion in determining that the victim was competent to testify. See State v. McNeill (1998), 83 Ohio St.3d 438, 443 (upholding a trial court's determination that two children were competent to testify, noting that "[w]hile the children could not answer every question posed, the transcript indicates they were in fact able to receive, recollect, and communicate impressions of fact, and appreciate the responsibility to be truthful"). The fourth assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ALLOWING A PSYCHOLOGICAL EXPERT TO TESTIFY TO OUT-OF-COURT STATEMENTS MADE TO HER BY THE ALLEGED CHILD VICTIM AND TO RENDER AN OPINION AS TO WHETHER THE CHILD HAD BEEN SEXUALLY ABUSED AND WHO THE PERPETRATOR WAS.
In his third assignment of error, appellant asserts that the trial court erred in permitting Dr. Baker to testify concerning the content of several out-of-court statements made by the victim. These statements, which describe the sexual contact perpetrated and identify appellant as the perpetrator, were made by the victim during a psychological examination conducted by Dr. Baker. Appellant objected to Dr. Baker's testimony at trial but the objection was overruled. The state of Ohio argues that these statements were admissible as an exception to the hearsay rule as provided in Evid.R. 803(4).
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Robb (2000), 88 Ohio St.3d 59,68, quoting State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, a reviewing court will not disturb the ruling of the trial court as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122, 129.
Evid.R. 803(4) states:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness: 4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
This court has previously held that statements made by a child declarant to a psychologist during a psychological examination are admissible under Evid.R. 803(4) where the purpose of the examination was the diagnosis and treatment of the child's psychological condition, rather than gathering evidence against the accused. State v. Vaughn
(1995), 106 Ohio App.3d 775, 780-781.
Appellant contends that Dr. Baker's testimony should not have been permitted by the trial court because Dr. Baker was not interviewing the victim for diagnosis or treatment but instead was conducting the interview for an investigatory purpose. The state of Ohio insists that the purpose of Dr. Baker's examination was to treat and diagnose the victim's psychological condition, and therefore, Dr. Baker's testimony was properly admitted by the trial court.
The victim was referred to Dr. Baker by the Butler County Children's Services Board ("BCCSB"). Dr. Baker testified that she works at the Children's Diagnostic Center, and that her job is to conduct evaluations of children, make diagnoses, and make recommendations as to treatment. In this instance, Dr. Baker conducted a developmental assessment of the victim and then discussed with the victim her experiences with good, bad, and secret touches. Dr. Baker allowed the victim to talk about these things using drawings and anatomical dolls. After the interview, Dr. Baker made a diagnosis of the victim and made recommendations to the BCCSB.
Dr. Baker also testified that the examination was played over a closed circuit monitor in another room so that a Hamilton police detective and a member of the BCCSB could observe. Dr. Baker explained that the police detective and the BCCSB worker were not consulted as part of the interview and did not participate in the interview. Appellant was indicted on charges of gross sexual imposition after this interview occurred.
Upon careful review of the circumstances surrounding the interview, we find that Dr. Baker's interview with the victim served dual purposes. The interview was not only conducted so as to diagnose and treat the victim, but it was also important to the investigation of this case. However, even though an investigator from BCCSB and the Hamilton Police Department observed the interview, they did not participate in the interview in any way and were not present in the interview room while the victim talked to Dr. Baker. Dr. Baker testified that she is a psychologist licensed by the state of Ohio and that she has earned her Ph.D. in psychology. There is no evidence in the record suggesting that Dr. Baker's interview was influenced by the simultaneous observation by children's services and law enforcement representatives, who were observing in a separate room. We hold that where a psychologist who is conducting an examination of a child for diagnosis and treatment permits law enforcement to observe the examination for investigative purposes and where law enforcement does not participate in the examination or influence it in any way, statements made by the child declarant to the psychologist during the examination may be admitted into evidence under Evid.R. 803(4). We find that the victim's statements to Dr. Baker were properly admitted into evidence.[2] The third assignment of error is overruled.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN DISMISSING A JUROR WHO HAD BEEN SEATED AND REPLACING HIM WITH THE ALTERNATE.
During the trial, the trial judge decided to dismiss one of the jurors and replace him with the alternate juror. In his fifth assignment of error, appellant argues that the trial court's decision to replace the juror was error.
R.C. 2945.29 provides:
 If, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty, the court may order him to be discharged. In that case, if alternate jurors have been selected, one of them shall be designated to take the place of the juror so discharged. (Emphasis added.)
Crim.R. 24(F) states:
 Alternate jurors. The court may direct that not more than six jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. * * *
The replacement of a juror with an alternate, as contemplated by R.C.2945.29 and Crim.R. 24(F), is within the trial court's discretion. Statev. Gleason (1989), 65 Ohio App.3d 206, 210, citing State v. Coleman
(1988), 37 Ohio St.3d 286, 293.
The juror in question had spoken to Delong at the courthouse during the trial. After this was discovered, the trial court judge conducted a voir dire of this juror, during which appellant and the prosecution were allowed to ask questions. The juror told the trial judge that he knew Delong, who was a waitress at Bob Evan's in Fairfield. The juror stated, "I see her there all the time. We've kind of gotten to be friends." The juror told the court that he had known Delong for two years, and that during that time Delong indicated that there was a problem involving her ex-husband (who the juror apparently was unaware was appellant) and asked his church prayer group to keep her in their prayers. The juror stated that he did not discuss the case with Delong.
Since it was discovered that this juror had a friendship with a potential defense witness and had even been asked to pray for this witness when she was having a problem that involved appellant, her ex-husband, the trial court did not abuse its discretion in deciding to remove the juror and replacing him with an alternate. The assignment of error is overruled.
Assignment of Error No. 2:
 THE VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF GROSS SEXUAL IMPOSITION IN VIOLATION OF R.C. 2907.05(A)(4) WAS NOT LEGALLY SUFFICIENT TO SUPPORT DEFENDANT-APPELLANT'S CONVICTION.
The standard of review of a claim of insufficient evidence was established in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which states: "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows that age of that person." "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
It is undisputed that the victim in this case was a person who was not appellant's spouse and was under the age of thirteen. However, appellant argues that there is insufficient evidence to support a conviction of gross sexual imposition because there is no evidence that appellant touched the victim and "no evidence that any touching done by [appellant] was done for the purpose of `sexually arousing or gratifying either person' * * *."[3]
Contrary to appellant's contention, there is evidence of sexual contact. The victim testified about her visit to Hayley's house and how she was touched "in the bird." Dr. Baker testified that the victim had been touched "outside her clothes between her legs." Several courts have found that "sexual contact" is sufficiently demonstrated by showing that a defendant touched an erogenous zone covered by clothing. See State v.Young (Aug. 15, 1997), Athens App. No. 96CA1780, unreported; State v.Gonzalez (Apr. 21, 1994), Cuyahoga App. No. 64777, unreported; State v.Curry (Feb. 27, 1991), Lorain App. No. 90CA004862, unreported; State v.Litton (Dec. 11, 1985), Wayne App. No. 2087, unreported. We agree with the conclusion of these courts that "sexual contact" as defined by R.C.2907.01(B) includes touching of erogenous zones covered by clothing.
Appellant contends that the prosecution failed to prove the requisite intent of gross sexual imposition. In order to prove the offense of gross sexual imposition, the state must show that a defendant committed the act with specific purpose or intention of sexually arousing or gratifying either himself or the victim. State v. Mundy (1994),99 Ohio App.3d 275, 287, citing R.C. 2907.01(B). Absent an admission of guilty, however, proof of an accused's purpose or specific intent requires consideration of circumstantial evidence. Id. at 288. Whether the touching was undertaken for the purpose of sexual arousal or gratification must be inferred from the type, nature, and circumstances surrounding the contact. Id. at 289.
The victim testified that she was touched "in the bird" and that this touching made her feel nervous. When asked if the man who had touched her had done anything with his hand, the victim testified that he "was just rubbing." Dr. Baker testified that the victim told her that Hayley's dad touched her between the legs and that when she squeezed her legs together he pried her legs apart and touched her between her legs again. Finally, there was testimony that appellant approached the victim and her sister with candy after the incident occurred. We conclude that there was sufficient circumstantial evidence to demonstrate that there was sexual contact in that the act was committed with specific purpose or intention of sexually arousing or gratifying the perpetrator or the victim.
Appellant also alleges insufficiency of evidence to support his conviction based upon the victim's failure to identify appellant in court. Although it appears that the victim did not identify appellant in court, when asked whether Hayley's dad was the person who touched her, she answered in the affirmative. The victim's narrative about the day in question clearly demonstrates that the incident occurred when she went to visit her friend Hayley. Even appellant agrees that the victim sat on his lap that day, although he denies touching her inappropriately. Moreover, Dr. Baker and the grandmother both testified that the victim told them that "Hayley's dad" was the man who had touched her. This evidence supports the identification of appellant as the perpetrator of the crime.
Finally, appellant insists that his conviction should be overturned because, he argues, the victim did not testify that the events alleged in the indictment ever occurred. The jury found appellant guilty of count two of the indictment. The following is in pertinent part what the jury was instructed regarding count two:
 The State charges in count two that on or about the 27th day of July 1999, at Butler County, Ohio, the defendant did have sexual contact with [the victim], to wit; [sic] while holding [the victim] on his lap, defendant forced her legs apart and stroked her vagina, a person who was not the defendant's spouse * * * and * * * was at the time a person under age 13.
Appellant insists that the victim never testified that the above events occurred. However, as previously mentioned, the victim testified that appellant touched her "in the bird" and that he was "rubbing" her. It was not necessary for this seven-year-old victim to use the word "vagina" in her testimony. Moreover, Dr. Baker's testimony, which was based on an interview with the victim that discussed in detail the different kinds of touches, specifically stated that appellant had rubbed the victim between her legs after prying her legs apart. The testimony of the victim and Dr. Baker provided legally sufficient evidence that the events alleged in count two actually occurred.
Upon review of the evidence presented at trial in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. Therefore, we hold that there was sufficient evidence to support appellant's conviction of gross sexual imposition. The second assignment of error is overruled.
Assignment of Error No. 1:
 THE VERDICT FINDING DEFENDANT-APPELLANT GUILTY OF GROSS SEXUAL IMPOSITION IN VIOLATION OF R.C. 2907.05(A)(4) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The standard of review based upon the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant argues that his conviction for gross sexual imposition is against the manifest weight of the evidence where appellant testified that he did not touch the victim inappropriately and where Delong testified that she did not observe any improper touching. Although according to the defense, nothing improper happened when the victim sat on appellant's lap, several witnesses, including the victim, testified otherwise. It was the jury's duty to assess the credibility of the witnesses and determine whether a crime occurred.
Appellant also challenges the validity of his conviction by suggesting that the victim had mistaken another person for "Hayley's dad." There was no evidence presented at trial, however, that suggested that the victim had incorrectly believed that another person, not appellant, was Hayley's dad. The manifest weight of the testimony supported the conclusion that the victim knew who Hayley's dad was.
Reviewing the evidence presented at trial, we cannot say that the jury clearly lost its way and created a miscarriage of justice so that appellant's conviction should be overturned as against the manifest weight of the evidence. This assignment of error is overruled. Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] We note that both Evid.R. 601 and the Frazier factors explicitly reference a child's ability to accurately communicate about the matters to which she will be called to testify. Evid.R. 601 speaks of "receiving just impressions of the facts and transactions respecting which they areexamined, or of relating them truly." (Emphasis added.) The firstFrazier factor asks a judge to determine "the child's ability to receive accurate impressions of fact or to observe acts about which he or shewill testify," and the second and third factors refer back to the first. (Emphasis added.) Despite these references, trial judges do not always question a child victim during a competency hearing about the events to which she will testify at trial. Instead, a competency hearing often contains only general questions about the child's everyday life. This practice does not seem to be the best way to ascertain competency under Evid.R. 601 or the holding of Frazier. However, in our analysis today we follow this court as well as many other Ohio courts that have affirmed a trial court's finding of competency in cases where the competency hearing did not involve any questions about the crime at issue. See, e.g., Statev. McNeill (1998), 83 Ohio St.3d 438; State v. Allard (1996),75 Ohio St.3d 482; State v. Kelly (1994), 93 Ohio App.3d 257, State v.Leach (Feb. 20, 2001), Clermont App. No. CA2000-05-033, unreported; Statev. Rayburn (Apr. 24, 2000), Clinton App. No. CA99-03-005, unreported.
[2] In this assignment of error, appellant also alleges that it was error to allow Dr. Baker to testify as to her opinion as to whether the victim had been sexually abused. However, appellant provides no case law or legal argument regarding this particular issue in his appellate brief. An appellate court may disregard an allegation of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of his argument as required by App.R. 16(A)(7). An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. Hawley v. Ritley (1988), 35 Ohio St.3d 157, 159. Therefore, we will not address the specific issue of whether the trial court erred by allowing Dr. Baker to testify to her opinion as to whether the victim suffered from sexual abuse.
[3] Some of the legal arguments we will address under this assignment of error were raised by appellant in his first assignment of error, which alleges that the conviction was against the manifest weight of the evidence. Where it seems that appellant was actually arguing the sufficiency rather than manifest weight of the evidence, we will consider these arguments in this assignment of error.