OPINION
{¶ 1} Defendant-appellant Glen M. Bash appeals his conviction and sentence entered by the Licking County Court of Common Pleas, on one count of felony fleeing, following a jury trial. Plaintiff-appellee is the State of Ohio.
 {¶ 2} STATEMENT OF THE FACTS AND CASE
 {¶ 3} On September 13, 2002, the Licking County Grand Jury indicted appellant on one count of failure to comply with the order or signal of a police officer (felony fleeing), in violation of R.C.2921.331(B),(C)(5)(a)(ii); and one count of no license plate light, in violation of R.C. 4513.05. Appellant entered pleas of not guilty to the charges at his arraignment on September 16, 2002. The trial court scheduled the matter for jury trial on November 26, 2002. The following evidence was adduced at trial.
 {¶ 4} On August 3, 2002, Trooper Joshua Weaver of the Ohio State Highway Patrol observed a vehicle without a functioning license plate light, traveling in Newark, Ohio. Trooper Weaver followed the vehicle and attempted to effectuate a traffic stop, activating the sirens and lights on his cruiser. He radioed dispatch to call in the stop, and turned on his video camera. The driver, however, did not stop the vehicle, but accelerated to speeds of 90 mph. The officer informed dispatch he was in pursuit. According to the officer, the vehicle was all over the road. He testified there were no other vehicles on the road at the time. The vehicle traveled off St. Rt. 16, down the exit ramp for St. Rt. 79 without decelerating. At the end of the exit ramp, the driver did not stop the vehicle at the posted stop sign, but attempted to negotiate a right hand turn onto Cedar Street. The driver lost control and the vehicle skidded through the intersection, and went over a curb on the opposite side of the roadway. Trooper Weaver testified if anyone had been traveling along Cedar Street, the person would not have been able to avoid an accident with appellant's vehicle. The incident occurred at approximately 2:10 a.m.
 {¶ 5} Trooper Weaver subsequently lost the vehicle. He testified about the policy of the highway patrol regarding the continuing or aborting of a pursuit. The trooper explained officers are instructed to discontinue a pursuit if it reaches a point where it creates "a serious risk of physical harm to persons or property." Trooper Weaver testified his sergeant called off the chase after the trooper lost contact with the vehicle. Trooper Weaver located the car approximately two hours later near an alley in a residential area of Newark. The trooper searched the vehicle and found a driver's license in the name of Nicole Ramage as well as pay stubs and court papers in appellant's name.
 {¶ 6} On August 11, 2002, Nicole Ramage contacted the Ohio State Highway Patrol in order to retrieve her vehicle. Ramage testified she and appellant had been in a relationship for approximately five years. Ramage testified, on August 2, 2002, appellant was working in Zanesville, Ohio, although the couple was living with friends in Somerset, Ohio. Ramage recalls appellant drove her vehicle to work that day and he drove it to work every day. Ramage conceded she knew appellant's license was under suspension. Ramage stated appellant did not return to Somerset after work on August 2, 2002, although he was suppose to return. She did not hear from him until August 11, 2002. During a telephone conversation on August 11, 2002, appellant advised Ramage he had been involved in a chase with a state trooper. Appellant related the details of the chase to Ramage, who subsequently relayed those facts to the highway patrol. Ramage did not discuss the chase with anyone except appellant.
 {¶ 7} Appellant called his sister, Brenda Coates, as a witness on his behalf. Coates, who lives in Zanesville, testified she saw appellant at 9:30 p.m. on August 2, 2002, in Zanesville on a street corner near his friend's house. Coates subsequently saw appellant around 12:30 a.m. on August 3, 2002, in the same area. Coates testified the drive between Zanesville and Newark is approximately 30 to 45 minutes long, and acknowledged appellant could have traveled to Newark after she saw him in the early morning hours of August 3, 2002.
 {¶ 8} On rebuttal, the State called Doug Tanner, appellant's boss during the time period in question. Tanner testified appellant worked on Friday, August 2, 2002. Appellant drove himself to work that day. At some point during the weekend, appellant contacted Tanner, and asked to borrow Tanner's truck. Appellant informed Tanner his vehicle had been stolen. Appellant told Tanner he (appellant) and Ramage were at a nightclub in Newark over the weekend, and when they left the premises the car was gone. Tanner testified he did not lend his truck to appellant, but noted he picked up appellant at Coates' house on the following Monday. Tanner noticed scratches on appellant's face.
 {¶ 9} At the close of the State's case-in-chief, appellant made an oral Crim.R. 29(A) motion for a directed verdict with respect to the felony component of the fleeing charge. The trial court denied the motion.
 {¶ 10} After hearing all the evidence and deliberation, the jury found appellant guilty of failure to comply with an order or signal of a police officer and further found appellant did cause a substantial risk of serious physical harm to persons or property, a felony of the third degree. The trial court found appellant guilty of the license plate light violation. The trial court sentenced appellant to a determinate term of imprisonment of four years on the felony fleeing. On the license plate light violation, the trial court imposed a $50.00 fine. The trial court memorialized the convictions and sentences in a Judgment Entry filed December 4, 2002.
 {¶ 11} It is from the conviction and sentence on the felony fleeing appellant appeals, raising the following assignments of error:
 {¶ 12} "I. THE CONVICTION OF THE DEFENDANT-APPELLANT IS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE TO WARRANT THE SAME.
 {¶ 13} "II. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION FOR A DIRECTED VERDICT OF NOT GUILTY MADE PURSUANT TO RULE 29(A) OF THE OHIO RULES OF CRIMINAL PROCEDURE.
 {¶ 14} "III. THE CONVICTION OF THE DEFENDANT-APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 15} "IV. THE TRIAL COURT COMMITTED HARMFUL ERROR WHEN, OVER THE CONTINUING AND REPEATED OBJECTION OF THE DEFENDANT-APPELLANT, IT ALLOWED THE "REBUTTAL" TESTIMONY PRESENTED BY THE STATE OF OHIO TO REACH THE JURY."
 I, III {¶ 16} In his first and third assignments of error, appellant challenges the sufficiency and weight of the evidence. Specifically, appellant takes issue with the felony enhancement of the underlying charge.
 {¶ 17} In order to enhance a failure of comply with the order or signal of a police officer to a felony of the third degree, the State must establish "the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C). In support of his position, appellant points out no accidents resulted from his actions. He adds the evidence established there were no other vehicles on the road or in the vicinity at the time of the pursuit. Additionally, there was no evidence of pedestrians being in danger or even in proximity of the pursuit.
 {¶ 18} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: AAn appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 19} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.
 {¶ 20} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541 citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 21} "Substantial risk" is statutorily defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Serious physical harm to persons" and "serious physical harm to property" are both defined in R.C. 2901.01. The statute provides, in pertinent part: (5) "Serious physical harm to persons" means any of the following: "* * * (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01 further provides: "(6) `Serious physical harm to property' means any physical harm to property that does either of the following: (a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace; (b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time."
 {¶ 22} In the matter sub judice, the evidence before the jury demonstrated appellant drove at an excessive rate of speed, at times reaching 90 mph. As noted supra, appellant did not stop at traffic signs, and did not slow down while negotiating a turn. As a result of this conduct, appellant lost control of his vehicle and skidded through an intersection. We find this to be competent, credible evidence to support the jury's finding appellant created a substantial risk of serious physical harm to persons and property, and such finding was not against the manifest weight of the evidence.
 {¶ 23} Appellant's first and third assignments of error are overruled.
 II {¶ 24} In his second assignment of error, appellant contends the trial court erred in overruling his Crim.R. 29 motion for acquittal. Specifically, appellant asserts the State failed to prove beyond a reasonable doubt appellant's operation of the motor vehicle created a substantial risk of serious physical harm to persons or property.
 {¶ 25} Crim.R. 29(A) requires a trial court, upon motion of the defendant, to enter a judgment of acquittal of one or more offenses charged in an indictment if the evidence is insufficient to sustain a conviction of the offense or offenses. However, a trial court "may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." On appeal of the denial of a Crim.R. 29(A) motion, the "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Williams (1996), 74 Ohio St.3d 569, 576, citing State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 26} For the reasons set forth in our Statement of Facts, supra, and in our analysis of appellant's first and third assignments of error, we find the State presented sufficient evidence from which a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could find the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 27} Appellant's second assignment of error is overruled.
 IV {¶ 28} In his final assignment of error, appellant maintains the trial court erred in admitting the testimony of the State's rebuttal witness.
 {¶ 29} In State v. McNeill (1998), 83 Ohio St.3d 438, the Ohio Supreme Court explained rebuttal evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party and becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence. Id. at 446. It is within the trial court's discretion to determine what evidence is admissible as proper rebuttal. Id. Accordingly, we will not reverse the trial court's decision regarding the State's presentation of rebuttal witnesses absent an abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 30} We find the trial court did not abuse its discretion in permitting the State to present the testimony of Tanner, appellant's boss, to rebut the alibi testimony of appellant's witness. Brenda Coates testified she saw and spoke with appellant in Zanesville during the evening hours of August 2, 2002, and the early morning hours of August 3, 2002. Tanner testified appellant contacted him during the course of that weekend to borrow his vehicle. Appellant told Tanner he and Ramage were in Newark. We find the trial court properly permitted the State to present such evidence. However, we agree with appellant Tanner's testimony went beyond merely rebutting appellant's alibi. Assuming, arguendo, the trial court abused its discretion in permitting Tanner to testify about matters beyond rebuttal of the alibi, over appellant's objections, we find appellant was not prejudiced thereby. The State presented more than sufficient evidence from which the jury could determine appellant was in Newark at the time of the chase.
 {¶ 31} Appellant's fourth assignment of error is overruled.
 {¶ 32} The judgment of the Licking County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Edwards, J., and Boggins, J. concur.